## Frank M. J. Kirn, Appellee, v. Chicago Journal Company, Appellant.

### Gen. No. 20,933.

1. MASTER AND SERVANT, § 707*—*when question of existence of relation is for the jury.* In an action by a policeman, who was riding on a wagon carrying newspapers for a certain daily newspaper publishing company during a strike of drivers for various daily newspapers, for damages for personal injuries sustained as a result of the alleged negligence of the driver in turning to the left to cross in front of an oncoming street car, *held* that under the evidence it was a question for the jury whether the driver was the servant of the newspaper publishing company or the servant of a certain delivery company.

2. MASTER AND SERVANT, § 682*—*sufficiency of evidence as to existence of relation.* In an action for damages for personal injuries against a newspaper publishing company by a policeman who was riding on a delivery wagon during a strike of the drivers of various daily newspapers, and who was injured as a result of the alleged negligence of the driver in attempting to cross the street in front of an oncoming street car, evidence *held* sufficient to sustain a finding that the driver was the servant of the newspaper publishing company, and not of the delivery company.

3. PLEADING, § 458*—*when question of variance is waived.* The question of variance between the proof and allegations in a declaration is waived where no objection or motion is made on such question but a motion is made simply to direct a verdict, and for a new trial, and exceptions taken to the overruling of such motions.

4. EVIDENCE, § 107*—*when telephone conversation is admissible.* A telephone conversation is admissible where material and relevant to the issues of a case.

Appeal from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1914. Affirmed. Opinion filed October 6, 1915. Rehearing denied October 15, 1915.

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

**Statement by the Court.** This is a suit for personal injuries brought by Frank M. J. Kirn, appellee and hereinafter referred to as the plaintiff, against the Chicago Journal Company, appellant and hereinafter designated as the defendant, and the Chicago City Railway. On the trial below, at the close of all the evidence, the court instructed the jury to return a verdict of not guilty as to the Chicago City Railway. The case was then submitted to the jury, who found defendant guilty, assessing the plaintiff's damages in the sum of $750. To reverse the judgment entered on this verdict, defendant has prosecuted this appeal.

CHYTRAUS, HEALY & FROST and EDWIN WHITE MOORE, for appellant.

ROBERT L. STEPHENS, for appellee.

MR. JUSTICE PAM delivered the opinion of the court.

At the time of the accident there was a strike involving the drivers delivering for various daily papers published in the city of Chicago. Because of the strike in question, plaintiff, a police officer, while in the performance of his duty as such, was riding upon a wagon which at the time of the accident carried papers of the defendant and the Chicago Daily News. This wagon had printed on its sides the name of the defendant. The driver of the wagon, one Myron, had started out at 2:15 from the barn, which was located at 139-141 West Sixty-third street, and had driven to the Illinois Central Railroad station on East Sixty-third street, between Washington and Madison avenues and stopped on the south side of the street in the subway under the Illinois Central Railroad tracks, where he left the wagon, returning after a few moments with bundles of newspapers which were to be delivered. The wagon, with Myron on the right-hand side and plaintiff on the left-hand side of the seat, was then driven east on the south side of the street. Just in front of it another

wagon was standing close to the curb, whereupon Myron passed it on the left-hand side, his wagon remaining, however, to the south of the south rail of the eastbound track of the Chicago City Railway. He then suddenly turned his horse on to the track as if to turn and go west, and as he started to do this, a car of the Chicago City Railway Company approached from the west ringing its bell, and some one hollered, but before the said Myron could either complete the turn he had started to make, or get off the track, his wagon was struck by the car, causing the plaintiff to be thrown from the wagon, whereby he sustained the injuries complained of.

Defendant admits in its brief that the accident was caused by the negligence of either Myron, the driver, or one Kerrigan, motorman of the car that collided with the wagon, thereby absolving plaintiff from any blame in connection with the accident. While defendant, in the course of its argument in support of its various contentions as to why the judgment should be reversed, complains of the action of the court in instructing the jury to find the Chicago City Railway Company not guilty, no error is predicated thereon.

Defendant first contends that the court erred in refusing to hold as a matter of law that Myron was not the servant of the defendant at the time of the accident, and, in urging this contention, relies upon the following principle of law: "Where a driver for a horse and wagon is hired from anyone who has him in his general employ and has the power to discharge him, the employer and not the hirer is liable for the driver's negligence." Defendant claims that the evidence shows that the driver Myron was in the general employ of the Chicago Delivery Company alone; that said company alone had the authority to discharge him; that the only control defendant had over said Myron was to give directions as to when and where deliveries were to be made; that at the time of the

accident said Chicago Delivery Company was, as to the defendant, an independent contractor for the delivery of its newspapers in the city of Chicago. Defendant therefore argues that under the principle of law heretofore stated it was not liable for the driver's negligence. Plaintiff contends, however, that there was no proof of the existence of the alleged Chicago Delivery Company; that, moreover, if there was, the said Chicago Delivery Company was but an agent for all newspapers in Chicago in securing drivers during the strike; that the control of the said Chicago Delivery Company was in the various newspapers including the defendant, and that the defendant had the right to discharge the driver, Myron, or any other driver it had secured through the Chicago Delivery Company. In considering these various contentions, it becomes necessary to review the facts having a bearing thereon. Prior to the strike the Chicago Journal, defendant herein, delivered its papers, independently of any other company publishing and delivering newspapers, through one Pierce who had a contract for the delivery of newspapers, but who, during the strike, refused to have, and did not have, anything to do with furnishing the drivers, but continued to furnish wagons and horses. After the strike, deliveries of all afternoon papers were made from one wagon. One of the depots for delivery was a barn located at 139-141 West Sixty-third street, whence deliveries were made of all newspapers for that section of the city, at the time of the accident. Plaintiff placed upon the stand one Claude Draper, who stated that in May, 1912, he had charge of deliveries at the aforesaid barn; that he had business dealings with defendant at that time only through its drivers; that at this barn there was a representative of the defendant by the name of Kirby, who directed the drivers as to their routes and gave them their route slips; that he (Draper) received his pay from the contractor, Pierce; that on May 23rd he talked with

Kirn v. Chicago Journal Co., 195 Ill. App. 197.

a representative of the defendant, whom he called Eckstein, but whose name the evidence shows was Eckstrom, concerning the drivers; and when asked what that conversation was, answered: "Well, he would send me the drivers; he told me that if the drivers were not satisfactory to send them back to him and he would replace them with better drivers"; that Myron was sent out to him on the day of the accident with a note from Eckstrom directing that he (Myron) be given a wagon that morning; that he (Draper) had nothing to do with paying these drivers; that he never had anything to do with the pay slips; that Eckstrom stated that "when a man didn't suit to send them to him, he would pay them off." Draper further testified that after the accident he talked with Eckstrom about the injury the horse had received in said accident, and Eckstrom wanted to know how badly the horse was hurt, and upon being told the horse would be laid up about six weeks, Eckstrom told him to leave the horse where it was until it was ready for work again, and to send the bill to him and he would settle. These conversations, testified to by Draper, were had with Eckstrom over the telephone. Plaintiff also called Eckstrom, who testified that at the time of the accident he was circulation manager of the defendant; that Pierce refused to have anything to do with furnishing the drivers during the strike; that that matter was turned over to the Chicago Delivery Company who, in that regard, was acting for all the papers. He stated further, that many times during the strike he was in telephone communication with the barn at Sixty-third street and may or may not have talked with a man by the name of Draper; that an employee of the defendant by the name of Kirby was at the barns all day, whose duty it was to send drivers out on their various routes; that if notified by Kirby that a driver had not appeared, he would call up the Chicago Delivery Com-

pany's office and get another driver. When asked who the Chicago Delivery Company was, he stated:

"I don't know who they are, except they were organized at that time to take care of the Chicago newspapers.

"Q. How long did they stay in existence? A. How long were they in existence?

"Q. Yes. A. They came in existence, I think, the first or the second week of the strike."

Eckstrom was then further cross-examined as follows:

"Q. Did the Chicago Journal Company, the defendant in this case, on the 23rd of May, 1912, have in its employ a driver named Myron? A. They did.

"Q. The Chicago Journal? A. The Chicago Journal?

"Q. Yes. A. A man named Myron on the joint delivery had been in Woodlawn. He was on one of Pierce's wagons.

"Q. In whose employment was he? A. He was paid by the Chicago Delivery Company.

"Q. Who hired him? A. Mr. Taylor, I think, hired him.

"Q. Who was Mr. Taylor? A. He was manager, or director, I don't know which, of the Chicago Delivery Company.

"Q. He had nothing to do with the Chicago Journal Company? A. Excepting to supply us with drivers.

"Q. Taylor hired all the drivers? A. Practically all of ours.

"Q. And the Chicago Delivery Company paid those men their salaries? A. Yes, they were paid—what we did was this, in order to secure the money for these men on their pay morning, we paid them, and then our pay-roll went over to the Chicago Delivery Company and I presume the Chicago Delivery Company was reimbursed."

As we read the foregoing evidence, it does not present a situation such as is set forth in the various cases cited by defendant in support of its contention, viz.: *Chicago Hydraulic Press Brick Co. v. Campbell,* 116

Ill. App. 322, and *Foster v. Wadsworth-Howland Co.,* 168 Ill. 514, and in a later case not cited by counsel, viz., *Connolly v. People's Gas Light & Coke Co.,* 260 Ill. 162, in each of which cases the alleged independent contractors had furnished, in some instances horses, wagons and drivers, and in others horses and drivers, and there was no question but that the person so furnishing the equipment was one entirely separate and apart, having no connection with the business of the person with whom it had contracted to do the teaming and delivering. In the case at bar, plaintiff made out a *prima facie* case by showing that the wagon, which was in charge of Myron on the day of the accident, bore the name "Chicago Journal." The evidence showed that it was operated for delivering papers published by the defendant. This was at least prima facie evidence of the possession and control of the wagon by the defendant. *East St. Louis Connecting Ry. Co. v. Altgen,* 210 Ill. 213; *Pittsburgh, Ft. W. & C. Ry. Co. v. Callaghan,* 157 Ill. 406. We realize that defendant contends that plaintiff was not content with simply showing those facts, but also showed that the said Myron was furnished by the Chicago Delivery Company; and that the said Chicago Delivery Company was independent of the defendant and that he was furnished under a contract with the Chicago Delivery Company. While there was some categorical evidence by Eckstrom, the acknowledged employee of the defendant, that the Chicago Delivery Company did furnish the drivers, yet neither the court nor the jury were compelled to accept that statement as conclusive on the question whether or not the Chicago Delivery Company was in fact an independent contractor. They had the right to take into consideration the further facts that the Chicago Delivery Company was organized to furnish drivers during the strike for all the newspapers; that its offices were located in the building of one of the newspapers; that Eckstrom did not

know who the Chicago Delivery Company was, save that a man named Taylor was its general manager or director; that the said Eckstrom had told the man in charge of wagons and horses for Pierce at the barn on Sixty-third street, that if drivers sent out by him were not satisfactory, he would replace them with better drivers; that all he had to do if a man did not suit him, was to send him back and he would pay him off; the fact that these men were paid by defendant; and that Myron was put to work upon the direct request, in writing, of Eckstrom. The court and jury might well have concluded from the conversation between Eckstrom and Draper that Draper's act in sending back a driver was equivalent to a discharge of the driver, and that when Eckstrom stated that he would pay them off and send better drivers, that he, Eckstrom, had the power to discharge the drivers. From all of the evidence the court and jury might further have reasonably concluded that the Chicago Delivery Company was not an independent contractor, but merely an agency representing the various newspapers in securing drivers during the emergency created by the strike. Defendant produced no employee or officer of the so-called Chicago Delivery Company, nor evidence of a single transaction of any original hiring of or of final payments to drivers alleged to have been furnished by said Chicago Delivery Company. Clearly, under this evidence, the court could not say, as a matter of law, that the said Myron, at the time of the accident, was the employee of an independent contractor, but it rightfully placed before the jury the question whether the said Myron was an employee of the defendant or of an independent contractor. Plaintiff's evidence was *prima facie* sufficient to prove the fact that the said wagon, at the time of the accident, was in possession and control of the defendant, and we cannot say that there was proof of facts in the record sufficient to overcome this *prima facie* case. Defendant had it within

its power, if there was a written contract between it and the Chicago Delivery Company, to produce same, also to produce the officers and employees of that company to show what its business was or how it was conducted; having failed therein, defendant cannot now fairly complain of the jury's finding on the issues, nor of the court's action in refusing to direct a verdict in its favor.

Defendant further contends that the court erred in not directing a verdict for it, on the ground that the declaration alleged that the driver was negligent in not getting his wagon off the track, while the only act of negligence which the evidence tended to prove was, that the horse was driven on the track in front of an approaching car; that therefore the negligence proven was at variance with the negligence as charged in the declaration, and that such variance between the proof and the allegations was fatal to a recovery, because the rule is well established that the plaintiff cannot recover upon proof of an act of negligence different from that alleged in the declaration. That such is the law we have no doubt, but the question of variance, unless raised in apt time, is waived. In all the cases cited by defendant, the objection to such evidence was made in apt time. However, in the case at bar, no objection on this ground was made to the introduction of the evidence at the time it was offered, nor was there a motion made to instruct the jury to find for the defendant because of such variance. Defendant does not claim, in its brief, to have raised any objection or made any motion because of the variance now complained of; it merely concludes its argument upon that point by saying that at the close of the plaintiff's case and at the close of all the evidence, appellants submitted a motion to direct a verdict, and also that said motion was denied and that exceptions were taken to the rulings on said motions as well as on the motion for a new trial. The defendant having failed to predicate an

objection or base any motion upon the question of variance, it has clearly, under the decisions of this court and our Supreme Court, waived all questions of variance. *Chicago City Ry. Co. v. Phillips,* 138 Ill. App. 438; *City of Chicago v. Bork,* 227 Ill. 60; *Lake Shore & M. S. Ry. Co. v. Ward,* 135 Ill. 511.

Defendant complains of the 16th instruction given on behalf of the plaintiff. The main objection against this instruction is that the court submitted to the jury the question whether or not Myron was the servant of the defendant, instead of holding as a matter of law that he was not its servant. We have already held that the court did not err in its ruling. While defendant, in the course of its argument, sets forth several other reasons why this instruction is bad, we, however, believe that it correctly stated the law, under the facts in the case, and that defendant's contention in regard thereto is not well taken.

Defendant also complains of the ruling of the court in admitting in evidence and submitting to the jury the telephone conversation testified to by Draper. Under the rule as laid down in *Godair v. Ham Nat. Bank,* 225 Ill. 572, the telephone conversation was admissible if material and relevant to the issues. That we have so regarded it is evident by our reference thereto in passing upon the first contention of the defendant.

Finding no reversible error, the judgment of the Circuit Court will be affirmed.

*Affirmed.*