Clara D. Watson, Defendant in Error, v. Edward Trinz and Rosalie K. Trinz, Plaintiffs in Error

Gen. No. 36,491.

380

382

Heard in the second division of this court for the first district at the February term, 1933. Opinion filed March 6, 1934. Rehearing denied and additional opinion filed April 7, 1934.

JOHN A. BLOOMINGSTON, for plaintiffs in error.

JOSEPH D. RYAN, for defendant in error.

MR. JUSTICE SCANLAN delivered the opinion of the court.

Clara D. Watson sued Marigold Garage Company, a corporation, Edward Trinz and his wife, Rosalie K. Trinz, to recover damages for personal injuries sustained by her. In a trial before a jury Marigold Garage Company was found not guilty and there was a verdict and judgment against Edward Trinz and Rosalie K. Trinz for $42,500. Edward Trinz and Rosalie K. Trinz sued out a writ of error to reverse the judgment, and thereafter we reversed the judgment and remanded the cause. (*Watson v. Trinz*, 262 Ill. App. 630 [Abst.].) Subsequently there was a second trial, and a jury returned a verdict finding defendants guilty and assessing plaintiff's damages at the sum of $28,000. Defendants have again sued out a writ of error to reverse the judgment entered upon that verdict.

The amended declaration consists of four counts. The first alleges, in substance, that defendants, at the time of the accident, were possessed of and had charge and control of a certain automobile which was then and there, through their agent and servant, operated

in a northerly direction on Sheridan road at its intersection with Cornelia avenue; that it was the duty of defendants to use ordinary care to guide, control, manage and operate the automobile; that while plaintiff, at the time and just prior thereto, was in the exercise of ordinary care for her own safety, defendants so carelessly, negligently and improperly drove the automobile that it struck plaintiff while she was crossing Sheridan road, in a westerly direction, at or near Cornelia avenue. The second count is like the first except that it alleges the car was being driven at a high and dangerous rate of speed, to wit, 40 miles an hour. The third alleges that defendants wilfully, wantonly and maliciously drove their automobile, and as a direct result of such conduct of defendants and each of them, plaintiff was knocked down to the ground and injured. The fourth charges defendants with conscious indifference to surrounding circumstances and conditions and that they then and there wilfully, wantonly and maliciously drove the automobile at a high, dangerous and excessive rate of speed, to wit, 40 miles an hour, within the limits of an incorporated city, contrary to the statute, and "wilfully, wantonly and maliciously drove and ran the automobile upon and against and struck the plaintiff with great force and violence. . . ." The Marigold Garage Company and Edward Trinz jointly filed the plea of the general issue and *a special plea that they did not own, operate nor control the automobile,* and Mrs. Trinz separately pleaded the general issue and *a special plea that she did not own, operate nor control the automobile.*

The accident happened on April 1, 1928, at about 11:30 p.m., at Sheridan road and Cornelia avenue, Chicago. Plaintiff was walking across Sheridan road in a westerly direction when the automobile in question, coming from the south, and driven and operated by one Smith, a servant in the general service of the

Marigold Garage Company, struck her and she was severely injured. No contention is raised by defendants that plaintiff was guilty of contributory negligence, nor that the driver was not guilty of negligence, nor that the driver was not guilty of wilful and wanton conduct. The only defense, upon the merits, is that neither defendant was the master of Smith, and that he, at the time of the accident, was a servant of the former defendant Marigold Garage Company. Mr. Bloomingston represented the three defendants in the first trial and the two Trinzes in the second. He represented the two Trinzes in this court upon the first writ of error and the instant one.

Defendants contend that ''the trial court erred in reinstating Rosalie K. Trinz as a party defendant after having directed the jury to find her not guilty at the close of plaintiff's evidence.'' After the judgment in the first trial defendants strenuously contended in this court that there was no evidence to hold Mrs. Trinz. To quote from their brief:

''Plaintiff introduced in evidence the application for a license for the year in which the accident happened. This would be prima facie evidence of ownership as of the date of the application for the license and in the absence of other proof would create a presumption of ownership as of the date of the accident. If there was no other evidence of ownership, it would have been sufficient and conclusive. Plaintiff, however, put Mr. Trinz on the stand and proved conclusively by him that he owned the car and that his wife did not own it. Here is the testimony *and from it the court will see that the evidence is clearly directed to the time when the accident happened.*

'' 'Mr. Ryan (counsel for plaintiff): Did you own that car?

A. I did.

Q. Are you sure of that?

A. Yes, sir.

Q. As a matter of fact, your wife owned it, didn't she?

A. I took the car in my name.

Mr. Ryan: Just a moment. Isn't it a fact that your wife owned the car, Rosalie Trinz, one of the other defendants in this case? Just answer yes or no.

A. No.'

"Having proved conclusively that Mrs. Trinz did not own the car, it is difficult to understand why judgment was permitted against her.

". . . Hence we say that under the undisputed evidence and the plaintiff's own evidence brought out by the plaintiff, Mr. Trinz was the sole owner of the car and hence a judgment against him and his wife must be set aside, for an erroneous judgment against one invalidates a judgment as to the other." (Italics ours.) We sustained that contention and reversed the judgment· as to both defendants and remanded the cause. Mrs. Trinz did not testify and was not present at either trial. Interrogated by his counsel in the second trial, Trinz testified that he did not know the whereabouts of his wife. It is a reasonable inference from the record that the Trinzes were not living together and that Mrs. Trinz was not interested enough in the proceedings to attend the trials. Upon the second trial plaintiff, in chief, introduced no additional evidence tending to prove Mrs. Trinz's ownership of the automobile. Upon both trials, plaintiff introduced a certificate of the Secretary of State to the effect that the license for the automobile for the year 1928 was issued, at her request, to Mrs. Trinz. In the application for the license Mrs. Trinz swore that she purchased the car on April 15, 1926, and was the owner of it. After plaintiff rested, counsel for defendants, in chambers, *orally* moved the court to find defendants not guilty, and after a conference there the trial court, after a con-

sideration of our former decision, stated, in chambers: "The motion is allowed as to Rosalie Trinz and the jury will be instructed to find Rosalie Trinz not guilty. The motion as to the defendant, Edward Trinz, is denied and the instruction refused." The following then occurred in open court: "The Court (addressing the jury orally): . . . The Court instructs the jury to find the defendant, Rosalie Trinz, not guilty. That is the wife of the man—there are two defendants in this case, one the wife and one the husband, and the Court at this time instructs the jury to find the wife not guilty." At the same session of court defendant Trinz took the stand in his own behalf. In response to a series of questions put to him by his counsel he testified that his wife was the owner of the car at the time of the accident. To quote from the record. "Q. Did you, at any time, own a Pierce-Arrow car? A. I did. Q. How long did you own it? A. I owned it about a year and a half. Q. And what did you do with it, at the end of a year and a half? A. I gave it to my wife as an anniversary present. Q. What was the date of giving it to your wife? A. It was the 27th of November 1927." The accident occurred April 1, 1928. Trinz's testimony was given very shortly after plaintiff had rested her case. As soon as he had testified to the foregoing, and before the completion of the direct examination, counsel for plaintiff made an oral motion "to reinstate this defendant this instant, and submit the question to the jury, and to withdraw the direction to find her Not Guilty. Therefore, my motion to reinstate Mrs. Trinz as a party defendant is entirely fitting at this time. . . . The Court: Proceed with this witness, and I will entertain your motion, Mr. Ryan, inasmuch as no written instruction has been given the jury, I will entertain your motion, but proceed with this witness. . . . I will reserve my ruling on it." Trinz then testified that *he* had purchased the car on

April 12, 1926. Upon cross-examination he admitted that on the first trial he had testified that he, and not his wife, was the owner of the car at the time of the accident but that he "was wrong." He then stated that at the former trial he did not understand that the questions referred to the time of the accident, but he finally admitted that he did know when the questions were put to him at the former trial that they related to the ownership of the car at the time of the accident. He further testified, upon cross-examination, that after he gave the car to his wife she, before the accident, gave it back to him; that he did not remember the date upon which she did that, but that he did not own the car at the time of the accident. Upon the following morning the trial court, after a consideration of the situation, stated to the jury the following: "The Court (orally addressing the jury): That this jury may understand the oral instruction given you yesterday, wherein the Court suggested to you that there being no evidence against Mrs. Trinz, that the Court would instruct the jury, 'Find her not guilty', in view of the evidence, the Court now wishes to retract that instruction to this jury. This case will proceed as against both defendants. I believe that is all the Court has to say."

Plaintiff, at the close of her case, had made out a *prima facie* case of ownership of the car against Mrs. Trinz, but the trial court, reading our opinion and assuming, apparently, that the defense was acting in good faith with the court as to the ownership of the car, evidently concluded that it would be useless, in view of what we said in our former opinion, to retain Rosalie Trinz in the case, hence his oral instruction to the jury. We had held that while the certificate made out a *prima facie* case for plaintiff, the presumption of ownership thereby established was overcome by proof of positive facts, viz., the testimony of Trinz

that he alone owned the automobile. Had defendants' counsel informed the court, upon the motion to direct, that Trinz intended, when called as a witness in his own behalf, to repudiate his former testimony, the trial court, in view of the fact that the plaintiff had made out a *prima facie* case against Mrs. Trinz, would not, of course, have acted as he did. Defendants' counsel does not pretend that he was surprised by Trinz's testimony. In fact, his examination of the witness shows clearly that he was not. In his argument to the jury he contended that Mrs. Trinz was the owner of the car at the time of the accident, and in this court he defends the testimony of Trinz on the second trial on the ground that "Trinz on the previous trial had forgotten that he had given the car to Mrs. Trinz." Trinz made no such excuse. The very unusual situation presented to the trial court undoubtedly shocked his sense of justice, and it would be a serious commentary upon our procedure if the court had been helpless to protect the plaintiff from becoming a victim of a dishonest defense. The trial court rightfully considered the situation as a challenge to justice, for had the plan of defense succeeded, plaintiff, with an admitted right of action against one or more of the original defendants, would have lost her suit as to all defendants, by a shifty, tricky defense. Defendants do not come to this court with clean hands.

In support of the instant contention defendants argue that the trial court "lost jurisdiction by his previous order as to her (Mrs. Trinz), he had no right or authority to reinstate her." "When she was directed out and the evidence went on without her being in the case the court lost jurisdiction as to her to render any order *except on a motion for a new trial.* Once out of the case her quondam counsel would have no right to agree to reinstate her. His right as her attorney ceased in so far as that phase of the case is concerned and

there is nothing in his agency for her that would permit him to thus sacrifice her rights'' (italics ours); that by no act of his could she be legally reinstated in the cause; that he was not ''authorized to represent her after she was dismissed from the case. He certainly had no right to waive her constitutional right to cross-examine witnesses against her and the court had no right by his ruling to take that right away from her.''

The record shows that Mrs. Trinz did not submit a written motion for a directed verdict in her favor at the close of plaintiff's case, nor a written instruction to that effect. No verdict was signed nor returned by the jury and no order nor judgment was entered by the court at the time of the oral instruction dismissing Mrs. Trinz. The oral retractment instruction was made during the same term of court, in fact, within a few hours after the first oral instruction was given. No final order had been entered from which an appeal could have been taken either by plaintiff or by Mrs. Trinz. The court had not lost jurisdiction as to her. In fact, defendants practically concede the point when they admit that the court still had jurisdiction, as to Mrs. Trinz, to pass upon a motion for a new trial.

The real question for us to determine is, Is Mrs. Trinz, under the record in this case, in a position to justly complain, *as against plaintiff,* that she was injured by the action of the court in retaining her in the case? No authorities are cited in support of the contention that Mr. Bloomingston had no authority to represent her after she was dismissed from the case, nor are we aware of any that under like facts so holds. That he did represent her to the end of the trial is clear. He did not withdraw his appearance as her attorney, and he opposed the retractment instruction. He introduced testimony of a number of witnesses on behalf of both defendants. He offered a written motion

at the conclusion of all the evidence to have the jury instructed in Mrs. Trinz's favor. Upon the denial of that motion he requested, on her behalf, three peremptory instructions covering three counts of plaintiff's amended declaration. In his closing argument to the jury he stated that he was making his argument on behalf of both defendants. At his request eleven instructions were given to the jury on behalf of both defendants, and five special instructions were given to the jury on behalf of Mrs. Trinz. He argued the motion for a new trial on her behalf and he is her attorney in this court.

As to the argument that "the effect of reinstating her was to permit evidence to be considered by the jury, as to her, as to which she had no opportunity to cross-examine:" This is the sole point urged that has any bearing on the complaint that she suffered substantial harm by reason of the retractment instruction. It is without the slightest merit. In considering this case it must always be borne in mind that in both trials defendants were represented by the same counsel. The only witnesses who testified for the defense prior to Trinz were Plume, the former manager of the garage, and Nelson. It seems idle to argue that although Mr. Bloomingston examined these witnesses on direct, on behalf of Trinz, Mrs. Trinz suffered because Mr. Bloomingston did not cross-examine them on her behalf and that plaintiff should suffer for his fault in that regard. Nor does the record show that after the retractment instruction Mr. Bloomingston was denied the right to bring the witnesses back and cross-examine them. *The sole witness for the defense whose testimony injured Mrs. Trinz was that of her husband, and her counsel placed the witness on the stand and purposely brought out that evidence.* Without reference to the question as to whether it would have been correct procedure to allow Mr. Bloomingston to examine Trinz on direct and

then cross-examine him on behalf of Mrs. Trinz, it is sufficient to say that Mr. Bloomingston, after the re-·tractment instruction, made no request to cross-examine Trinz. But counsel seems to argue that he should have cross-examined Trinz on behalf of Mrs. Trinz and that although he did not do so, ''he certainly had no right to waive her constitutional right to cross-examine witnesses against her.'' Just why plaintiff should be held responsible for this dereliction, if it was a dereliction, is not made plain to us. The logical effect of counsel's argument is that he should have cross-examined Trinz on behalf of Mrs. Trinz and that his failure to do so now operates against plaintiff and to the advantage of both Trinzes. We readily concede that it would have been somewhat embarrassing for Mr. Bloomingston to cross-examine Trinz on behalf of Mrs. Trinz, but such embarrassment would have arisen from the fact that he assumed the duty of defending both. If the able and experienced counsel for Mrs. Trinz, in good faith, was satisfied that the court had no power to give the retractment instruction, he should have declined to participate in the trial thereafter. Mrs. Trinz elected, through her counsel, to continue in the case, and she cannot now assign error on the court's ruling. (See *Central Bond & Mtg. Co. v. Roeser,* 323 Ill. 90, 97.) Nor did her counsel, at the time the so-called reinstatement instruction was given to the jury, move to withdraw a juror and continue the case, but stated his position as follows: ''Mr. Blomingston: Now, as far as Mrs. Trinz is concerned, then the defendant, Mrs. Trinz, now takes the position, that she desires to introduce no evidence at all, after the close of the plaintiff's testimony, and will stand by the record as made at that time, and we will ask at the appropriate time, —well, we will ask the Court now, to tell the jury that any evidence which will be introduced, which has been introduced since the close of plaintiff's testimony, is

not to be considered by the jury, in so far as the defendant Rosalie Trinz is concerned.'' The counsel, by taking this position, conceded that Mrs. Trinz was still in the case and expected the jury to pass upon her guilt or innocence. In other words, counsel was willing to speculate on the result, and, as the record conclusively shows, Mrs. Trinz, through him, continued to actively participate in the trial thereafter. After a careful consideration of the instant contention we have reached the conclusion that the court did not commit reversible error in retaining Mrs. Trinz in the case, and that his action in that regard prevented the success of a plan to bring about a miscarriage of justice.

Defendants next contend that the court erred in overruling the motion of Mrs. Trinz, made after the retractment instruction, that she be allowed to stand on the evidence as made at the close of plaintiff's case. As Mrs. Trinz did not stand upon this motion, but took part in the trial after the court overruled her motion, she will be deemed to have abandoned the motion. (*Princell v. Pickwick Greyhound Lines*, 262 Ill. App. 298. Certiorari denied by the Supreme Court.) In addition to what we have heretofore stated as to the participation of Mrs. Trinz in the trial after the retractment instruction, we may further state that instructions offered for both defendants, and special instructions offered for Mrs. Trinz, are based upon the theory that the jury had a right to consider all of the evidence in determining their verdict. It is significant that defendants' next contention is predicated upon the assumption that the preponderance of the evidence is in Mrs. Trinz's favor.

Defendants contend that "the verdict and judgment are against the law and the evidence as to each and both of the defendants and the preponderance of the evidence as a matter of law and fact is in favor of defendants and each of them.'' After a very careful

examination of all of the evidence we find no merit in it. The main point raised is that the driver of the automobile, at the time of the accident, was a servant of the Marigold Garage Company and was not a servant of either of the Trinzes. Plaintiff strenuously contends that the verdict of the jury in the first trial finding Marigold Garage Company not guilty was an adjudication not only of its nonliability, but also of every fact necessarily involved in that finding; that whatever the equities may be between the two Trinzes, neither can assert, as against plaintiff, that the Garage Company was operating the car. While a number of authorities are cited in support of the contention, we do not deem it necessary to pass upon it. In our former decision we said: ''The law, however, recognizes that a servant in the general service of one, may be transferred, under contract or otherwise, to the service of another so as to become for the time being the latter's servant, with all the legal consequences of that relationship. (*Schweitzer v. Thompson & Norris Co.,* 229 N. Y. 97; *Delaware & Hudson Co. v. Van Derpool,* 292 Fed. 688; *The P., C., C. & St. L. Ry. Co. v. Bovard,* 223 Ill. 176; *Harding v. St. Louis Stock Yards, supra* [242 Ill. 444].) In *Braxton v. Mendelson,* 233 N. Y. 122, it was said: 'Was the servant whose negligence injured a third party, performing work for his master within the scope of his employment or was he loaned by his master to another to do the latter's business? In the one case the general employer is liable for his torts. In the other he is not. But while the rule is clear its application is often difficult. The true relationship between master and servant may be obscured by circumstances seemingly contradictory.' In the instant case there is some testimony tending to sustain the theory of the plaintiff. Where the facts are undisputed the existence of the relationship of master and servant is for the court. (*Woods v. Bowman,* 200 Ill. App. 612,

and cases cited.) Under the pleadings and the evidence in the instant case, it was a question for the jury. *(Kirn v. Chicago Journal Co.,* 195 Ill. App. 197; *Shannon v. Nightingale,* 321 Ill. 168.)'' See also *Allen-Garcia Co. v. Industrial Com.,* 334 Ill. 390, 394. *Densby v. Bartlett,* 318 Ill. 616, 620, cited by defendants, also recognizes the above principle. In the instant case, while Smith, the chauffeur, at the time of the accident was in the general employ of Marigold Garage, nevertheless, the jury were justified in finding from the evidence that when defendants used an employee of the garage, as they did Smith on the evening in question, the employee for the time being was a servant of defendants and not a servant of the garage; that a driver on such trips was directed and controlled by defendants and was loaned to them by the garage company as a ''mere accommodation'' as patrons of the garage, for which accommodation the garage received nothing. Plume, the manager of the garage, testified that Trinz paid them $25 monthly for storing, cleaning and polishing the car; that when a patron came to the garage and wanted a man to take him home the patron would pay the man by tipping him; that the employee of the garage company in driving the patron home and in driving the car back to the garage was subject to the orders of the patron; that there was a sign in the garage to the effect that if patrons used one of the employees in taking them home and in bringing the car back to the garage, the employee, in such work, was the servant of the patron, and that on the bills that were sent to Trinz monthly there was the wording, in plain type, ''that cars driven by our employees are driven at owner's risk.'' From Mr. Plume's testimony it appears that such service was not a part of the contract between the garage and Trinz, and it is evident that the use of an employee in such service involved a risk not incidental to the storage and care of the car. The

witness Charles J. Rea testified that Trinz told him "that he had no arrangement with the garage about delivering the car or taking him home from the garage, although he frequently stopped at the garage and had someone take him home. He always gave the fellow a tip." While Trinz testified, on the second trial, that he paid $2 or $2.50 a month to the garage for the use of the chauffeur, he admitted that he did not so testify at the first trial, and Plume testified that Trinz paid nothing for such service. Any honest, intelligent jury would place little, if any, reliance upon the testimony of Trinz upon any controverted question of fact in the case.

Under all the circumstances of this case there is no merit in the contention of Mrs. Trinz that she had nothing to do with the arrangements made with the garage and is therefore not bound by any agreement made between the garage and her husband, and that even if the driver of the car was her husband's agent while performing the special service, he was not her agent. Trinz, with her knowledge and assent, held himself out as owner of the car and having full control over the same. She cannot hold her husband out as the owner of the car and in control of the same, and then avoid the effect of his action. She knew that the car was kept and taken care of at the Marigold garage and that arrangements had to be made in connection therewith, and she allowed her husband to deal with the garage as the owner of the car, and to pay the bills. She obtained a new trial from this court, after the first judgment, by strenuously contending that her husband owned the car at the time of the accident. She appears here now, after the second judgment, admitting, through her counsel, that she was the owner of the car at the time of the accident, but insisting that she must not be bound by any action of her husband or the driver.

We cannot agree with defendants' contention that under the evidence given at the second trial it must be held that Mrs. Trinz was the sole owner of the car. Trinz admitted that on the first trial he testified that he was the sole owner of the car at the time of the accident, and that what he then said was true. Rea testified that before the first trial Trinz told him ''that the automobile which injured Mrs. Watson was his, although neither he nor his family were in it at the time.'' Trinz admitted that he made an arrangement with the garage about the keep of the car. He constantly got the car out of the garage and used it as he saw fit. The garage bills for the keep of the car were sent to him and he paid them. He admitted that he made an arrangement with the garage company about using the employees for driving him home and taking the car back to the garage. He testified that he purchased the car on April 12, 1926. From Mrs. Trinz's affidavit in her application for a license it would appear that she purchased the car April 15, 1926. In their brief filed in the instant writ of error defendants insist that the evidence proves conclusively that Mrs. Trinz was the owner of the car at the time of the accident. It is significant that each of the Trinzes filed a special plea of nonownership and control of the automobile. The jury were fully warranted in finding from the evidence that the Trinzes were joint owners of the car, that each had some interest in it. Defendants argue that even if it be found that the Trinzes were both owners of the car, nevertheless, Mrs. Trinz was not in the car at the time that her husband picked up Smith at the garage, and did not participate in the trip, and therefore, as the car was being used by Trinz for purposes of his own, Mrs. Trinz could not be held responsible for the accident, as the chauffeur was not her agent. It is a sufficient answer to this contention to say that Trinz testified, upon direct, that his wife was in the car with

him when he left the Chateau theater and remained in the car until they reached their home, and that on their way home they stopped at the garage and tooted the horn and Smith came out and drove them to the hotel where they lived. "Q. All right. Then what happened? A. Then we got out of the car and he took the car back to the garage." Upon cross-examination he stated that he did not remember if his wife was in the car or not, but still later in the cross-examination the following occurred: "Q. Now, where had you been, and your wife been, that night? A. I don't remember where we had been, but the car was in front of the theater when we went home that night." "I may have gone to dinner with the car. We live quite a way from the garage." Trinz also admitted that he instructed Smith, at the garage, to drive them home, and that after they reached home he instructed Smith to take the car back to the garage. It was used that night for the benefit of both Trinzes and was returned to the garage for the benefit of Mrs. Trinz as well as Trinz's, since she was a joint owner, of the same. She was present when her husband told Smith to return the car to the garage and made no objection to the order. Defendants' evidence shows that on several occasions Mrs. Trinz was in the car with her husband when they stopped at the garage on their way home and got a chauffeur to drive them home and take the car back. The strained argument that Mrs. Trinz was not acquainted with any arrangement made by her husband as to the keep of the car, etc., hardly merits consideration. Defendants cite *Potts v. Pardee,* 220 N. Y. 431, as an authority that the owner of an automobile, even though in the car at the time, is not liable for the torts of the driver when the driver was not under the control of the owner. In *Fluegel v. Coudert,* 244 N. Y. 393, the court refers to the doctrine of the *Potts* case as "obsolete," because of the passing of a statute bearing

on the subject. In *Gochee v. Wagner,* 257 N. Y. 344, the court limits the doctrine of the *Potts* case to a situation where the car was being used upon the business or pleasure of the borrower. The judge who wrote the opinion in the *Potts* case concurred in the opinion in the *Gochee* case. In the latter case it appears that the wife of the owner of the car drove it on an errand for her mother; she stopped and picked up the owner, who was riding in the rear seat while they proceeded on the mother's errand, when the accident occurred. The husband brought suit against the wife's mother, on the ground that the driver was acting as her agent at the time, and contended that under the rule in the *Potts* case, he, the owner, was not liable for the accident. The court said (p. 348) : ''When the respondent entered the car, he regained dominion over it and the rule applicable under the statute in the absence of the owner ceased to apply. It was respondent's car, he was present and had the legal right to control its operation, and the negligent conduct of the driver was imputable to him. The mere fact that he chose to sit on the rear seat and refrained from directing its operation did not change his rights or limit his liability.''

Defendants complain that by certain rulings the cross-examination of plaintiff was unduly restricted. While the court sustained objections to a number of questions put to plaintiff on cross-examination, nevertheless it appears that all of the information sought to be elicited by these questions had been brought out by prior questions put to plaintiff. It is a complete answer to the instant contention to say that the subject matter covered by counsel's question had to do with the care exercised by plaintiff while crossing the street and that the defendants, in this court, do not claim that plaintiff was guilty of contributory negligence, nor do they even claim that the driver was not guilty of wilful and wanton conduct as alleged in the third count of the amended declaration.

Defendants contend: "The persistency and ingenuity of counsel for plaintiff in insisting on parading a supposed insurance feature of the case before the jury was, we contend, not only improper but reprehensible." By their pleas defendants denied ownership of the automobile and plaintiff was therefore required to prove that one or both of them owned the car. If ever there was a case where a plaintiff had a right, in attempting to prove ownership, to inquire into the matter of insurance upon the car, it is the instant one. There was evidence tending to show that the car had been insured by General Accident Insurance Company and that the files relating to the insurance had been turned over to Mr. Bloomingston. The latter, placed upon the stand, stood upon his privilege as an attorney and declined to answer questions relating to the policy of insurance. Plaintiff's counsel stated to the court, in the hearing of the jury, that he wished the policy, "for the sole purpose of proving the ownership of the car at the time of the accident," but he was unable to secure the policy or to prove in whose name it had been taken out, because of the attitude of defendants. Because of the pleadings as to nonownership filed by defendants, plaintiff had a right to prove that defendants, or one of them, had taken out a policy of insurance upon the car, as a circumstance tending to prove ownership, and the mere fact that such evidence might tend to prejudice the minds of the jury in arriving at a verdict is not sufficient ground for excluding it. (See *McGovern v. Oliver,* 177 N. Y. App. Div. 168, 163 N. Y. S. 275, 276; *Magee v. Vaughan,* 212 Fed. 278, 280; *Paepke v. Stadelman,* 222 Mo. App. 346, 349; *Sibley v. Nason,* 196 Mass. 125, 129; *Laffery v. Gypsum Co.,* 83 Kan. 349, 362; *Finkbine Lumber Co. v. Cunningham,* 101 Miss. 292, 301–2; *Vaughn v. William F. Davis & Sons* [Mo. App.], 221 S. W. 782, 786.) In the argument of plaintiff's counsel to the jury he stated: "I

believe the court himself will tell you that the question of insurance and the discussion of it, and all evidence offered or attempted to be introduced in reference to it, was for the sole and only purpose of proving ownership. It obviously has no bearing on whether the driver of the car was guilty of negligence; it has no bearing on whether Mrs. Watson was guilty of contributory negligence; it has no bearing on the subject of wilful and wanton conduct; it has nothing to do with her damages." Defendants' counsel also referred to the policy in his argument. Furthermore, the court instructed the jury that all evidence relating to liability insurance was offered and admitted for the sole and only purpose of proving or tending to prove the ownership of the automobile, and that "the evidence relating to the subject of insurance has no bearing whatever on the question of negligence, if any, or wilful and wanton conduct, if any, on the part of the driver of the said automobile, as charged in the plaintiff's declaration; or contributory negligence, if any, on the part of the plaintiff; or damages, if any, sustained by the plaintiff; and in considering these questions you should dismiss from your minds entirely the subject of insurance."

Defendants contend that "improper remarks and conduct on the part of the court and by counsel for plaintiff aroused the passion and prejudice of the jury." After reading the bill of exceptions we are surprised at the charge made against the trial court. After the court decided to hold Mrs. Trinz in the case, counsel for defendants upon a number of occasions treated the court with insolence and contempt, and the only charge that justly could be made against the trial court is that he showed extreme forbearance, indeed gentleness, toward the counsel, when he should have punished him for flagrant misconduct. It would unduly lengthen this opinion, and serve no useful purpose, to cite the instances we have found that show this atti-

tude of counsel toward the court. We find no merit in defendants' instant contention.

Defendants contend that plaintiff's instructions one and two permit the jury to find both defendants guilty, and that under the evidence only one could be found guilty. There is no merit in this contention as both properly could be found guilty under the proof. Defendants also contend that the second instruction assumes that the driver was the agent and servant of defendants. The instruction states the allegations of the third count of the amended declaration and defines the issues under that count, and while the third paragraph of the instruction is not free from criticism, nevertheless, we do not think that the giving of the same constituted serious error, especially as defendants gave several instructions based upon the theory that the driver was their agent and servant, and they are in no position, therefore, to complain of the alleged vice in plaintiff's instruction. We find no merit in defendants' complaint that plaintiff's fourth instruction should not have been given because it assumes facts not warranted by any evidence.

Defendants contend that "the verdict of the jury shows passion and prejudice," because of the amount awarded. No reference to the evidence bearing upon the injuries sustained by plaintiff is made in support of this contention. In his closing argument to the jury Mr. Bloomingston stated that "there can be no doubt that this lady was very badly hurt, and in as much as she was not herself guilty of any fault as far as the care of her injuries are concerned, it may be well granted that her injuries are as bad as the doctor says." At another point he speaks of the plaintiff as a woman "who is so grievously hurt." As a result of the accident plaintiff sustained a compound fracture of the right and left thigh bones and a compound fracture of the left leg that involved both the tibia and fibula. The

bones of the left leg were broken in many places and the leg was thereby distorted. She suffered a fracture of the two rami of the pelvis and a fracture of the right scapula. A Lane plate was fastened by means of screws to the fractured portion of the right thigh bone, and a bony union was thereby obtained. The left thigh bone is bowed or curved, the fragments not having properly united. The condition is permanent unless an operation, chiseling the callous formed and shortening up the leg so as to get fresh edges and then putting on a Lane plate and fastening the bones in position, is performed. This operation would result in shortening the leg four or five inches. The doctor testified that he had never definitely recommended such an operation. Her left leg was operated on three times and her right leg once. They dressed her legs with adhesive tape, put weights on them, and then took calipers and drove them into the left knee bone and suspended the calipers from a rod above her head. She was in that appliance for several weeks. She was compelled to lie flat on her back for eight months. She has an ankylosis of the right knee joint. She had bladder trouble which caused considerable distress and pain. When she first left the hospital she had a Simpson splint on her left leg and used two crutches. She returned to the hospital and was again operated on. On that occasion she remained there for six months, and when she left she walked with two crutches and a brace. At the time of the trial she required the aid of one crutch. The bill of her doctor amounted to $3,000; the hospital charged $4 a day for her room, and there were more than a hundred X-rays taken of plaintiff, that cost from $3 to $5 each. The damages assessed on the first trial were $42,500. It seems hardly necessary to say that the argument that the verdict on the second trial, for $28,000, shows passion and prejudice, is clearly without merit.

We have carefully considered the numerous contentions raised by defendants. The judgment in this case is a just one and it should be and it is affirmed.

*Affirmed.*

SULLIVAN, P. J., and GRIDLEY, J., concur.

ADDITIONAL OPINION UPON "PETITION FOR REHEARING."

In an alleged petition for rehearing filed in this cause no point is made that this court erred in any of its rulings, nor is the justness of our judgment, affirming the judgment of the superior court, questioned. We are asked "to so amend the opinion so as to make it clear to him who reads that the court did not intend to reflect on counsel's integrity as an attorney or as a man"; "that the opinion be modified by striking therefrom remarks reflecting on his integrity." Counsel states: "This court well knows that attorneys who represent casualty insurance companies cannot pick the client whom they defend, and having once been employed to defend them must exercise all skill and diligence they possess in behalf of the client. . . . Counsel cannot choose their clients, nor guarantee their veracity, nor can counsel neglect to present his client's testimony merely because his testimony does not agree with that given on a previous trial. . . . Counsel was placed in a somewhat difficult position, and it may well be that his first duty is to his client and that he should take his steps according to the evidence as it was and not according to what he knows may later develop in the evidence"; that "counsel for defendant . . . could not guarantee his client or his client's veracity, and if the defense was tricky or dishonest, was not responsible for it, he having no alternative but to take the evidence as he found it and present it to the court and jury, as required by the duty of an attorney to his client"; that "unless counsel was responsible for defendant Edward Trinz's testimony, that is, unless he

suborned the testimony, the reference to clean hands cannot surely refer to him, nor can the characterization of a shifty and tricky defense be referred to him.'' Counsel argues that even if the court had not retracted his instruction to find Mrs. Trinz not guilty, nevertheless, ''the plaintiff would not have lost her suit, but would merely have been required to try the case again. The court had the power to see that there was no miscarriage of justice and could have exercised his right to grant a new trial, had there been an obvious failure of justice in the case.'' In our opinion it would have been a miscarriage of justice had the trial court not retained Mrs. Trinz in the case. Counsel assumes that plaintiff, at the close of her case, had failed to make out a *prima facie* case as to Mrs. Trinz and contends that in that state of the record he owed no duty to inform the court that the defendant Edward Trinz intended to change the testimony he gave at the former trial. As we stated in our opinion, the ''plaintiff, at the close of her case, had made out a *prima facie* case of ownership of the car against Mrs. Trinz''; that the presumption of ownership was established by the introduction of the certificate of the Secretary of State to the effect that the license for the automobile for the year 1928 was issued, at her request, to her, and that in the application for the license she had sworn that she purchased the car on April 15, 1926, and was the owner of it; but, as we also stated in our opinion, the action of the court in giving the oral instruction to the jury, notwithstanding the fact that the plaintiff had made out a *prima facie* case, was based, apparently, upon the assumption ''that the defense was acting in good faith with the court as to the ownership of the car,'' and ''that it would be useless, in view of what we said in our former opinion, to retain Rosalie Trinz in the case.'' Certainly, under such circumstances, coun-

sel, an officer of the court, owed a duty to be fair and frank with the court.

It would seem hardly necessary for us to state that we do not agree with counsel's argument that unless he suborned the testimony of Trinz it was his duty to present the evidence, even "if the defense was tricky or dishonest."

After a very careful re-examination of the language of our opinion, in the light of the record, and after an earnest consideration of counsel's request, we see no good reason why any language contained in the opinion should be modified. The so-called petition for a rehearing is denied.

*Petition for rehearing denied.*

SULLIVAN, P. J., and GRIDLEY, J., concur.