THE OHIO AND MISSISSIPPI RAILROAD COMPANY, Plaintiff in Error, *v.* SIDNEY DUNBAR *et al.*, Defendants in Error.

### ERROR TO MARION.

A railroad company cannot relieve itself from liability by leasing its road; especially so where the power to lease is not expressly given by the charter.

Where parties hire the use of cars from a railroad company, to be employed in transportation of freight, to be laden as the hirers choose, the company does not incur any risk as to the mode adopted in loading the cars.

Common carriers are not liable for losses occasioned by an inherent defect of the article causing its destruction, nor for the loss of weight in cattle transported by rail; but every reasonable effort must be used to deliver property at its destination in proper time, and an omission to perform this duty creates a liability; and all proximate damages resulting from a neglect of it, may be recovered.

PLAINTIFFS below (defendants here,) filed their declaration in an action of "trespass on the case," containing three counts.

1st count demurred to, and demurrer sustained.

2nd count. That plaintiffs below, on, etc., at, etc., delivered to defendants a certain lot of hogs, viz., two hundred and forty-two, of value $2,000, at Salem, to be carried thence to Illinois-town, to be there safely and securely delivered for plaintiffs, and in consideration of certain rewards, etc., defendants undertook, and then, etc., promised they would carry and convey said hogs from, etc., to, etc., and there safely and securely deliver said hogs for said plaintiffs, and that they would furnish a suitable number of cars, to wit, five, and that they would start from the station house on the next morning, to wit, January 26th; avers that defendants received said hogs, etc., and did not furnish said cars, nor did they start on the next morning, nor safely and securely deliver the same at Illinoistown, etc.; refused to furnish cars; did not start for seven days; and so carelessly and

negligently did defendants conduct themselves, that thirty head of hogs, being crowded, etc., in pens and on cars, died and were lost, in consequence of the failure aforesaid. Plaintiffs lost a large amount of money, etc., by shrinkage, and hire of hands, from the time of delivery to defendants, to delivery to plaintiffs; expenses in renewing engagements, etc.

3rd count. That in consideration that plaintiffs had then, etc., delivered to defendants certain, to wit, two hundred and forty-two pork hogs, to be carried, etc., (as in second count,) and delivered to plaintiffs, for certain rewards, etc., the defendants undertook and promised to carry said hogs from, etc., to, etc., and there deliver the same for plaintiffs, in a reasonable time then following. Averment that defendants received the hogs, etc., but did not in a reasonable time, carry and convey said hogs from, etc., to, etc., and there deliver the same, etc., within said reasonable time, but neglected and refused so to do; in consequence whereof, plaintiffs lost thirty head of hogs and a large sum, to wit, $600, in loss of weight and trouble and expense, after the lapse of said reasonable time, in watching hogs in pen; were forced to lay out money, $100, to renew engagements, etc. Conclusion in case *ad damnum*, $1,500.

Defendants plead, 1st, general issue in case; 2nd, general issue in assumpsit; 3rd, a special plea. *Actio non,* because before the 25th January, 1856, or the accruing of the causes of action, in plaintiffs' declaration, defendants had hired and let their road, with fixtures, engines, cars, machinery, etc., to one G. W. Jenks, who, at the time when, etc., had entire control over the whole, and by his agents, etc., completely managed the same, free from control of defendants, and that the contract, etc., if any such was made, was with Jenks and his agents, then lawfully in possession and control of said road. Verification, etc.

Demurrer to third plea sustained; defendants stand by third plea; issue joined; jury, and trial; verdict for plaintiffs, $371.72. Motion for new trial overruled, and judgment on verdict; excepted to, and bill of exceptions signed.

*F. A. Blair,* defendants' witness, was station agent at the time plaintiffs came to the Salem station; that he was the only person who was authorized to make contracts for shipment of freight; never made any contract to ship hogs; would not do it. The company charged so much ($18.50) per car; have seen cars as closely loaded as these were; do not consider hogs in care of company till on cars; we could not have got the hogs away sooner than we did. It was extremely cold; had to keep men to bail water for passenger trains.

Ohio and Mississippi Railroad Co. *v.* Dunbar et al.

*Andy Harmon* was at station, working for defendants, when plaintiffs came with hogs; never made any contract with them; freight trains run very irregularly; very cold; water froze in tanks and pumps; impossible for us to get them off before we did; hogs put in cars by plaintiffs' consent. I stated at the time, the hogs were shipped at owner's risk, and the company would not be responsible for loss by crowding, but the owners must run that risk themselves; that they had the car at so much and loaded it as they pleased. I have seen more hogs in same cars than plaintiffs put in; they went well enough; freight trains ran no further than to Sandoval; the reason was, there was no water except at Carlyle, and they could only take water enough to run to Sandoval and back to Carlyle, and if they came to Salem they got out of water.

Verdict, $371.72. Motion for new trial, overruled and excepted to.

Errors assigned:

1st. The court erred by proceeding to try the foregoing cause, without an issue joined.

2nd. The court erred by proceeding to try issue joined upon the plea of *not guilty* in case, and *non-assumpsit* filed in this cause.

3rd. The court erred in sustaining plaintiffs' demurrer to defendants' third plea.

4th. The court erred in refusing to carry demurrer back to plaintiffs' declaration, and sustaining it to said declaration.

5th. The court erred in admitting testimony for plaintiffs.

6th. The court erred in refusing to allow testimony offered by defendants, to go to the jury.

7th. The court erred in giving improper instructions to jury, for plaintiffs.

8th. The court erred in refusing proper instructions asked by defendants.

9th. The court erred in overruling defendants' motion for new trial, and entering judgment for plaintiffs, on verdict of jury, and against defendants.

Wherefore defendants pray that said judgment be reversed, set aside, annulled, made void, and a new trial granted, etc.

I. N. HAYNIE, for Plaintiff in Error.

S. N. BRYAN, and R. S. NELSON, for Defendants in Error.

WALKER, J. In this case, numerous exceptions were taken on the trial below, but we shall confine our attention to those only which were urged in the argument. We are asked to re-

verse the judgment of the Circuit Court, because the plaintiffs' demurrer to defendants' third plea was sustained. That plea alleged, as a defense to the action, that the defendant had, prior to the 25th of January, 1856, leased their road, engines, cars, machinery and fixtures, to G. W. Jenks, who had entire control of the road, free from any control of the defendants, and that the contract, if any such were made, was with Jenks and his agents, and not with defendants. This plea presents the question, whether an incorporation of this kind has the legal capacity to lease its corporate property and franchises, so as to be relieved from liability to the public for injuries sustained and damages resulting from breach of contract entered into by the lessee.

The question seems to be new, and we have been referred to no authority sustaining the position, nor have we been able to find any. And in determining this question, it may be well to advert to some of the general principles which govern bodies of this character. They undoubtedly derive all of their privileges, as well as their existence, from the power that creates them; and we must look to their charter for their power to act. The privileges of such bodies must be either expressly or impliedly granted. The rights and privileges legally exercised by them are exclusive in their nature, and for that reason they should be held strictly to act within the powers granted. It will not do to say that it is more convenient, more profitable to the company, or that it would render the company less responsible, to act in a particular manner, that we may infer such authority. Power to act in a particular manner, can only be inferred when such act is necessary to perform an object expressly authorized, and the mode of its performance is not specified; or when the exercise of the power claimed is necessary to accomplish the object of the company's creation. When these bodies accept their charters, they are held to enter into a contract with the State, to discharge all the duties imposed, and to exercise the rights and privileges conferred on them, in the manner prescribed. And they must be held to a performance of this contract in precisely the same manner as is required of individuals.

The sixteenth section of the charter of this company, (Private Laws, 1851, p. 94,) authorizes them to borrow money, in such sums as may be necessary, for finishing and operating their road; to issue and dispose of the bonds of the road for money so borrowed; to mortgage their corporate property and franchises, or to convey the same by deed of trust, to secure the payment of any debt contracted by the company for such purpose. While these powers are extensive, it will hardly be con-

tended that they confer any power to lease the property and franchises of the road, so as to release the company from liability for the non-performance of duties devolving upon them as a corporation. We are unable to perceive that it is necessary that they should lease the road and franchises, to perform any act expressly authorized by their charter, or to effectuate the objects of its creation. Other sections of their charter authorize them to make, ordain and establish all by-laws, rules and regulations necessary to carry out the powers conferred; to regulate the manner of transportation of persons and property; the width of their track; the construction of wheels; the form and size of the cars; the weight of loads, and all other matters and things respecting the use of the road. It will be observed that the legislature has been specific in the enumeration of the powers granted, but in them all, we nowhere find any, either expressly or impliedly giving this power to lease their road so as to release them from liability. If such leases may be made, and the effect claimed results from them, railroads may avoid all liability to the public. And if such leases should be to irresponsible and reckless persons, the remedies for wrongs inflicted, duties omitted, and contracts violated by the lessee, would not be worth pursuing. That the legislature intended to confer such power on these companies, we do not believe. And we therefore think the court below committed no error in sustaining the demurrer to the plea. But we do not undertake to determine whether a railroad may make such a lease as would authorize the lessees to run and use such roads or not, as that question is not presented by the record in this case.

Exceptions were taken to the giving of plaintiffs' instructions. The second of these is, "That if the jury believe, from the evidence, that the plaintiffs, for the want of a sufficient number of cars, were compelled by necessity to ship in four cars, which were insufficient, the fact of the agent telling them that they shipped at their own risk, does not relieve defendant from liability for failing to supply the proper number of cars." If this property freighted on defendant's road, is to be governed in all respects by the rules governing common carriers, and plaintiffs' having hired cars to freight these hogs, will not have any effect on the rule, then the instruction was properly given. But it must be admitted that plaintiffs had the right by contract to hire the use of cars to freight their hogs from Salem to Illinoistown, and to load the hogs in such manner as they might choose. And by doing so the company could incur no risk as to the mode plaintiffs adopted in loading the cars. That would be entirely under their control, and they would be responsible for their want of judgment in so doing. There was evidence in this case

without any conflict, that plaintiffs had hired cars of the company to ship these hogs, at eighteen dollars and fifty cents for each car, and that while loading them they were informed that they loaded them at their own risk. If this evidence was true, we think the plaintiffs, when they had contracted for more cars than were furnished, should have insisted upon the contract, and if they did so, they would have the right in a count on this contract to recover for the damage sustained by its breach. But under the counts in the declaration in this case, plaintiffs had no right to recover damages for a breach of such contract. And we are therefore of the opinion that this instruction should not have been given.

The sixth instruction is this, " The court is asked to instruct the jury, that if they believe, from the evidence, that defendants ordered the plaintiffs to put their property in the cars for transportation from Salem to Illinoistown, then the defendants are liable as common carriers for all damages done to property of plaintiffs while in their care and possession; and if the jury believe, from the evidence, that by the delays, carelessness or negligence of defendants, the plaintiffs, without their fault, have sustained damages, they should find for the plaintiffs and fix the damages according to the evidence of the case." The doctrine seems to be well settled that common carriers are not liable for losses occasioned by an inherent defect of the article causing its destruction. Addison Contracts, 807. And this principle applies to live stock in so far as they are liable to decrease in weight from this mode of transportation, and this instruction should have been so modified, and with that modification it would have been proper. The defendants, after receiving the property, were bound to use every reasonable effort without delay to deliver it at its place of destination, and failing to do so, were liable as common carriers for the damages resulting from such neglect of duty. The law implies such a promise on their part. But this liability would only extend to immediate and proximate damages, growing out of the non-performance of their implied contract, and not to such as are remote or contingent. If plaintiffs had a contract for the sale of these hogs at St. Louis, and the defendants, by their unnecessary delay, rendered it necessary for plaintiffs to go to St. Louis to get the time of delivery extended, we see no reason why, as the damages are specially laid in the declaration, that they should not be recoverable. But the evidence as presented by the bill of exceptions leaves it doubtful whether there was a contract requiring the delivery of the hogs at an earlier date than they arrived at their destination; or whether the extension might not have been obtained by other less expensive means than by going there in person.

We are unable to perceive any objection to the other instructions given, as they seem to correctly announce the law of the case.

The judgment of the court below should be reversed and the cause remanded.

*Judgment reversed.*