## Case No. 1,053.

### BARRON v. ILLINOIS CENT. R. CO.

[1 Biss. 453;[1] 2 Chi. Leg. News, 385.]

Circuit Court, N. D. Illinois. July Term, 1864.[2]

DEATH BY WRONGFUL ACT—ACTION FOR DAMAGES UNDER ST. ILL. FEB. 12, 1853 — WHEN NEXT OF KIN MAY SUE—RAILROAD COMPANY LIABLE FOR ALL TRAINS ON ITS TRACK.

1. Under the Illinois statute of February 12, 1853, an action can be maintained for the benefit of the next of kin, even though they may have had no legal claim on the deceased for

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

[2] [Affirmed in 5 Wall. (72 U. S.) 90.]

support. It is not necessary to prove actual pecuniary loss.

[See Barley v. Chicago & A. R. Co., Case No. 997.]

[See note at end of case.]

2. If the injured party would have had, by the common law, a right to sue if he had lived, then, if he dies, his representatives can maintain an action. The statute did not intend to give them a right of action in one section, and in the second render that right nugatory by depriving them of all damages.

[See note at end of case.]

3. What circumstances the jury may consider.

4. If a railroad company allows the trains of another company to run over its track, as to passengers on its own trains it is responsible in the same manner as if all the trains belonged to itself.

[See Illinois Cent. R. Co. v. Barron, 5 Wall. (72 U. S.) 96.]

[See note at end of case.]

At law. This was an action under the statute of February 12, 1853, brought by William T. Barron, executor, to recover damages for the death of William Barron, who was killed on the 8th of January, 1862, between Hyde Park and Chicago, while a passenger on the cars of [the defendant] the Illinois Central Railroad [Company. A demurrer to the declaration was overruled. Case No. 1,052. The hearing is now on the merits. Verdict and judgment for plaintiff. This was afterwards affirmed by the supreme court in Illinois Cent. R. Co. v. Barron, 5 Wall. (72 U. S.) 90.]

The statute reads as follows,—Gross, St. 1871, p. 60, [Sess. Laws, p. 97:] "§ 1. Whenever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who, or company, or corporation, which would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony." "§ 2. Every such action shall be brought by and in the names of the personal representatives of such deceased person, and the amount recovered in every such action shall be for the exclusive benefit of the widow and next of kin of such deceased person, and shall be distributed to such widow and next of kin, in the proportion provided by law in relation to the distribution of personal property left by persons dying intestate; and in every such action the jury may give such damages as they shall deem a fair and just compensation, with reference to the pecuniary injuries resulting from such death to the wife and next of kin of such deceased person, not exceeding the sum of $5,000; provided, that every such action shall be commenced within two years after the death of such person."

Clark, Cornell & Norton, for plaintiff.

McAllister, Jewitt & Jackson, for defendant.

DAVIS, Circuit Justice, (charging jury.) By the common law this action could not be sustained.

In 1853 a statute was passed in this state giving a right of action wherever death is caused by the act of a person or corporation, where if death had not ensued the party injured would have been entitled to sue. The act also provides, that the action shall be brought by the personal representatives of the deceased, and the amount recovered shall be for the exclusive benefit of the widow and the next of kin, and that the jury may give such damages as they shall deem a just and fair compensation with reference to the pecuniary injuries resulting from such death to the wife and next of kin, not exceeding the sum of $5,000.

Barron was never married, and it is contended by the defendant, that the next of kin being his father, brothers and sisters, had no claim on him for support or services, and therefore there could have been no pecuniary loss to them by his death.

We cannot adopt this construction of the law, but charge you that there can be a recovery if the deceased left no kin surviving him, who had any legal claim on him, if living, for support. The cause of action is given in the first section of the act in clear and unmistakable terms. If the injured party, by the common law, had a right to sue if he had lived, then, if he dies, his representatives can bring an action. Many individuals who lose their lives by the fault of persons and corporations, are of age, unmarried, and have no next of kin dependent on them for support. We cannot suppose that the statute intended to give the representatives of such persons the right to sue in one section, and make that right nugatory in the second section, by depriving them of all damages. The policy of the law was evidently to make common carriers more circumspect in regard to the lives entrusted to their care. They were responsible at common law, if through their fault, broken limbs were the result, but escaped responsibility if death ensued. To remedy this evil, and provide a continuing responsibility, was, in the opinion of the court, the object of the law. We do not think it requisite to prove present actual pecuniary loss. It can rarely be done. The attempt to do it would substitute the opinions of witnesses for the conclusions of the jury. The facts proved will enable the jury to decide on the proper measure of responsibility. Some cases are harder than others, and the law intends that the jury shall discriminate in different cases. There is no fixed measure of damages, and no artificial rule by which the damages in a given case can be computed. The jury are not to take into consideration the pain suffered by the deceased, nor the wounded feelings of surviving relatives, and no damages are to be given by way of punishment. In this case the next of kin are the parties who were interested in the life of the deceased. They were interested in the further accumulations which he might have added to his estate, and which might hereafter descend to them.

The jury have a right, in estimating the amount of pecuniary injury, to take into consideration all the circumstances attending the death of Barron, the relations between him and his next of kin, the amount of his property, the character of his business, and the prospective increase in wealth likely to accrue to a man of his age, with the business and means which he had. There is a possibility in the chances of business that Barron's estate might have decreased rather than increased, and this possibility the jury may consider. The jury also have a right to take into consideration the contingency that he might have married, and his property descended in another channel. And there may be other circumstances which might affect the question of pecuniary loss, which it is difficult for the court to particularize, but which will occur to you. The intention of the statute was to give a compensation for the pecuniary loss which the widow, if any, or the next of kin might sustain by the death of the party, and the jury are to determine, as men of experience and observation, from the proof what that loss is. In order to render a verdict for the plaintiff, it is necessary that the defendant should have been in fault.

The Illinois Central Railroad Company engaged to carry Judge Barron safely from Hyde Park to Chicago, and, as a common carrier, was bound to the most exact care and diligence required for the safety of passengers. The facts in the case are few and uncontradicted. On the morning of the 8th of January, 1862, Judge Barron was a passenger from Hyde Park to Chicago. The train was from seven to ten minutes behind time, and the track was slippery. By contract between the Michigan Central and Illinois Central companies, the cars of the former were permitted to use the track of the latter, as far as Calumet. Proper time tables were arranged. The Cincinnati express of the Michigan Central, by these time tables, should have passed Hyde Park at least thirty minutes in advance of the train of the Illinois Central Railroad. On the morning of the 8th of January, the Cincinnati express train was behind time, and collided with the Illinois Central train at Kenwood, which was the immediate cause of the disaster. It is argued that the Cincinnati train caused the death of Barron, and that therefore the Illinois Central is not liable. The jury may believe, from the evidence, that the Cincinnati train was chiefly in fault, and that without its agency the calamity would not have happened; yet if they also believe from the evidence, that the misconduct or negligence of

those in charge of the Illinois Central train contributed to the disaster, then the defendant was in fault, and the plaintiff is entitled to recover.

It is not a question which train was mostly in fault, but whether the train of the defendant was in fault at all. It is for the jury to say, from the evidence, whether the employes of the Illinois Central Road used the necessary degree of care and diligence in the management of their train on that morning. Their train was behind time; the track was slippery, and it was known to them that an express train was liable to come up at any minute. Should they not have indicated by flagging, or in some other way, that they were using the road? Can the jury say that if this had been done this accident would have occurred? If the proper degree of diligence did not require flagging, and if being out of time did not contribute to the accident, then the Illinois Central train was not in fault. And the court would further instruct you, gentlemen, that if you shall find that the death was caused by the joint fault of those who had the management of the Michigan Central and the Illinois Central trains, then the defendant is liable in this action; or if you shall believe from the evidence, that the Michigan Central train was running on the road of the defendant by virtue of a contract with it, and that the train was under the sole management of the agents of the Michigan Central Road, and that the death was caused entirely by their fault, then, under the conceded facts of this case, the defendant would still be responsible. We understand that the road on which the accident occurred belonged to the defendant, and, by its charter, was under its sole control to carry passengers and property; and if it allowed the trains of the Michigan Central to run over it under the management of the agents of the Michigan Central, it should be done in such a manner as not to interfere with the safety of the passengers of the defendant, and as to such passengers, the fault of the Michigan Central Road in running their train is the fault of the defendant

Verdict and judgment for the plaintiff for $3,750 damages.

NOTE, [from original report.] Consult also opinion on demurrer. 1 Biss. 412, [Barron v. Illinois Cent. R. Co., Case No. 1,052.] A railroad company allowing another to run cars over its road is liable for injuries done. Colegrove v. New York & H. R. Co., 6 Duer, 382. A railroad company is liable for an injury occasioned by negligence of its agents in management of a train under their control, though belonging to another company. Fletcher v. Boston, etc., R. Co., 1 Allen, 9.

[NOTE. This judgment was afterwards affirmed by the supreme court. In delivering the opinion, Mr. Justice Nelson held, with the Illinois cases, that the owner of the road was not relieved of responsibility by giving to the Michigan Company the privilege of using such road. See Chicago, St. P. & F. D. L. R. v. McCarthy,

20 Ill. 385; Ohio & M. R. Co. v. Dunbar, 20 Ill. 623; Chicago & R. I. R. Co. v. Whipple, 22 Ill. 105; Nelson v. Vermont & C. R. Co., 26 Vt. 717; and McElroy v. Nashua & L. R. R., 4 Cush. 400. The statute, in respect to this measure of damages, remarked the learned justice, seems to have been enacted upon the idea that, as a general fact, the personal assets of the deceased would take the direction given them by the law, and hence the amount recovered is to be distributed to the wife and next of kin in the proportion provided for in the distribution of personal property left by a person dying intestate. If the person injured had survived and recovered, he would have added so much to his personal estate, which the law, on his death, if intestate, would have passed to his wife and next of kin. In case of his death by the injury, the equivalent is given by a suit in the name of his representative. There is difficulty, in either case, in getting at the pecuniary loss with precision or accuracy; more difficulty in the latter than in the former, but differing only in degree; and in both cases the result must be left to turn mainly upon the sound sense and deliberate judgment of the jury. Illinois Cent. R. Co. v. Barron, 5 Wall. (72 U. S.) 90.]