Will Orange, Appellee, v. Norman B. Pitcairn et al., Appellants.

568

February term, 1935. Heard in this court at the Opinion
filed June 8, 1935.

KRAMER, CAMPBELL, COSTELLO & WIECHERT, of East
St. Louis, for appellants; N. S. BROWN and HOMER
HALL, both of St. Louis, of counsel.

BEASLEY & ZULLEY, of East St. Louis, for appellee.

MR. PRESIDING JUSTICE EDWARDS delivered the opin-
ion of the court.

Will Orange brought suit in the city court of East
St. Louis against Norman B. Pitcairn and Frank C.
Nicodemus Jr., receivers for the Wabash Railway
Company, to recover for injuries sustained on the
right of way of said railway. There was a jury trial
and a verdict for defendants, which the court set aside
and awarded a new trial; from which order the de-
fendants below have, after leave granted by this court,
perfected an appeal.

The declaration charged that plaintiff below was
employed by defendants as a section hand upon their
right of way; that they were at the time engaged in
interstate commerce; that while riding to work upon

a certain car pulled by a gasoline motor car, on the main track of defendants, owned and operated by them, where plaintiff and other section hands were engaged in raising the said track, reballasting and putting new ties under the rails, the coupling between the motor car and the car upon which plaintiff was riding broke, due to the fault or negligence of the defendants, and that as a result plaintiff was thrown from the car upon which he was riding, and severely injured.

To the declaration was pleaded the general issue, and also two special pleas, the first of which averred that at the time of the accident plaintiff was not in the employ of defendants, and the second plea alleged that at such time they were not the owners of, nor operating, the car in question. Plaintiff replied to the pleas, asserting, as to the first, that he was in the service of defendants when injured, and that as regards the second, defendants were the owners and operators of such car at such time. The injury occurred on July 21, 1932, and plaintiff had been employed on the work for about three weeks prior to the accident.

It does not appear to be seriously disputed that at the time of such occurrence the Wabash Railway Company was engaged in interstate commerce, and under the ruling of *Kusturin v. Chicago & A. R. Co.*, 287 Ill. 306, work of repairing an interstate railroad is a part of interstate commerce; hence the action was properly brought under the Federal Employers' Liability Act.

The proof shows that on March 25, 1932, defendants entered into a contract with the Industrial Construction Company to do all work, and furnish all equipment, in connection with relaying rails, applying ballast and surfacing tracks at such point or points on the Wabash Railway Company's right of way as defendants should designate, and to be paid therefor at a specified rate. The contract further provided that defendants should have a general supervision over the

work, to see that the contract was performed according to its terms; that the contractor should take out, at its own expense, all necessary indemnity insurance, required by any legal regulations, and expressly provided that it (the contractor) assumed all liability for injury to its property, its employees or to third persons.

At the trial the court admitted, over the objection of the plaintiff, three checks from the construction company to the plaintiff, for payment of his services during such employment; also seven receipts signed by plaintiff, on forms of the industrial commission of Illinois, showing that he received from said Industrial Construction Company compensation due for the periods of time covered by the receipts, ''for accidental injuries sustained by the said Will Orange on July 21, 1932, while in the employ of the Industrial Construction Company.'' The court likewise admitted, against plaintiff's objection, the contract previously referred to. He asserts that the admission of such exhibits, and each of them, was error, which justified the setting aside of the verdict and the award of a new trial.

Having brought the action under the Federal Employers' Liability Act, and having averred that plaintiff, at the time of sustaining the injury, was employed by and in the service of defendants, the former assumed the burden of proving the existence of the relation of master and servant, as an integral and material element of his case. *Standard Oil Co. of Indiana v. Allen,* 189 Ind. 398, 126 N. E. 674; 39 Corpus Juris, p. 989, sec. 1208.

Where the issue raised by the defendants is that they did not employ the plaintiff, it is proper to admit proof of payments by others for the services rendered, to show that such parties, and not the defendants, were considered, by him, as his employers. 39 Corpus Juris, p. 53, sec. 29. The acceptance of pay

checks of the Industrial Construction Company, by the plaintiff, for services rendered before the accident, and his execution of receipts for sums of money after such event, which recite that they are compensation for accidental injuries sustained while in the employ of such construction company, are circumstances which tend to show that the Industrial Construction Company was his employer; as it is common knowledge, and general practice, that the wages of a laborer are paid by his employer, likewise his compensation for accidental injuries received in such service. The checks and receipts, in our opinion, were properly admitted in evidence.

As to the contract, when offered, the plaintiff objected generally that it was incompetent and immaterial, and specifically that it contained no mention about work at Reddick, where the accident occurred, or pertaining to the work that plaintiff was doing.

By reference to the contract it is seen that it provides for work "at such point or points on the line of the railroad of the Company as may hereafter from time to time be designated by the chief engineer of the Company." The proof is that the work in which plaintiff was engaged, at the time of injury, had been so designated, hence the specific objection was untenable. The contract was a circumstance tending to show by whom the work was to be done, and who was to pay the laborers therefor, and when taken in conjunction with the checks and receipts indorsed or signed by plaintiff, bore with convincing force upon the question as to whose servant he was at such time. It was both competent and material, and not obnoxious to the general objection.

Plaintiff contends that the contract, by its terms, shows that defendants were in direct and immediate control of every act to be performed, and every employee, through its chief engineer. We do not so under-

stand it. The agreement reserves to defendants the right of supervision, and confers upon them certain powers calculated to, and the purpose of which was to insure the performance of the work punctually and in accordance with the terms of the contract. These appear to have been prudent precautions, necessary in view of the purpose and scope of the agreement, and while it was, in a sense, a control, it was not a detailed control of the actions of the contractor or its employees. It was a judgment over the results alone.

The defendants did not retain the right to direct the method of work, or the manner in which it should be done, but only the authority to supervise, to the extent of assuring its performance in accord with the covenants of the contract; and where such is the case, the relation thus created is that of independent contractor, and not master and servant. *Foster v. City of Chicago,* 197 Ill. 264, 267; *Casement & Co. v. Brown,* 148 U. S. 615.

It is further asserted that the contract is ineffectual as a defense for the reason that the work which it covers involves the exercise of a power conferred by its charter upon the Wabash Railway Company, and that being such, it cannot be delegated to an independent contractor and thereby relieve the railroad from liability.

The general rule governing such situations is stated in *Boyd v. Chicago & N. W. Ry. Co.,* 217 Ill. 332, 336, as follows: "A railway corporation will be held liable for the wrongful act of a contractor while exercising, with the assent of the corporation, some chartered power or privilege of the corporation which he could not have exercised independently of its charter, but it will not be liable for the wrongful act of an independent contractor not exercising any special power derived from the charter."

In the case just referred to, a track laborer working within a railway right of way, in the preparation of

a roadbed for a railroad track, was killed by the falling of overhanging clay, while shoveling gravel into a car. The court, on page 337, observed: "The question in this case is whether the construction of a railway by a contractor upon the right of way and property of the railway corporation is the exercise of chartered powers or privileges by the contractor, and it is answered in the negative by the decision in the case of *West v. St. Louis, Vandalia and Terre Haute Railroad Co.,* 63 Ill. 545. In that case the railway company contracted with a firm of contractors to construct its railroad and appurtenances. A servant of the contractors was injured by the use of a poisonous mixture upon the timbers of a freight house. It was decided that the railway company, in letting the contract, did not commit the execution of any of its franchises to the contractors, and that the contractors, in hiring the plaintiff, were only exercising their private and natural right, and not any special power derived from the charter of the corporation."

In other jurisdictions a similar conclusion has been reached. The case of *Atlanta & F. R. Co. v. Kimberly,* 87 Ga. 161, 13 S. E. 277, at page 279, enunciates the rule: "The authorities all hold that a railroad company has the right to contract with others for the construction of its road, and it is held that a contract of this character is not such a delegation of its chartered rights as to render the company liable for unauthorized wrongs committed by the contractor or his servants while engaged in the work."

In *Cunningham v. International R. Co.,* 51 Tex. 503, 513, the rule is stated to be: "The principle that a railroad company cannot delegate to an employee its chartered rights and privileges, so as to exempt it from liability, does not extend to the use of the ordinary ways and means for the construction of the road, but to the use of such extraordinary powers only as the Company itself could not exercise without having first

complied with the conditions of the legislative grant of authority. Thus, after having first procured the right of way, the Company can delegate to another lawful authority to enter upon the same and make its roadbed and perform other proper acts of construction, but it cannot delegate lawful authority without having first secured the right of way by donation, purchase or the exercise of the right of eminent domain.''

The well considered case of *Hughes v. Cincinnati & S. Ry. Co.*, 39 Ohio St. 461, 477, declares: ''The question in this case, however, is this: If a railroad company, by the exercise of its power of eminent domain, acquires all the land necessary to the construction of its road, and sends its contractors to construct its road thereon, is it necessarily liable for a trespass committed by them while engaged upon the work? We think not. The work of constructing a railroad is not corporate work unless it is done by a corporation through its agents and servants, and a person may contract with a railroad company to construct its road, without becoming its agent or servant.''

The rule appears to be well settled that a contract for the construction, or for the reconstruction, of a railroad within the right of way previously acquired, is not a delegation of a chartered power or privilege, and that a railroad company may enter into such contract without constituting the contractor its servant.

In the instant case the work in question, which was really a reconstruction of a section of railroad track, was being done on the land of the Wabash Railway Company, and was of such a nature that it might be done by any property owner on his own premises. It required no powers of charter, either to enter upon the right of way, or to perform the work then being done; hence it was the subject of delegation, and the contract constituted the Industrial Construction Company an

independent contractor, and not the agent or servant of the defendants.

Lastly, it is claimed that the contract is a shift or device to evade the liabilities imposed by the Federal Employers' Liability Act, and as such is without force, under section 5 of the act, which section provides that "any contract, rule, regulation or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this Act, shall to that extent be void."

The Supreme Court of the United States, in the case of *Chicago, R. I. & P. Ry. Co. v. Bond,* 240 U. S. 449 (Vol. 36 Sup. Ct. 403), ruled that such section 5 is not violated by a contract of an interstate railway company under which certain work on its right of way, such as handling coal at the company's chutes, loading wood, cinders and sand from cars to storage and vice versa, is to be performed by an independent contractor, who expressly assumes all liability for injury to himself or his property, or his employees or third persons.

The decision in *Erie R. Co. v. Margue,* 23 F. (2d) 664, is cited to the contrary. In that case, however, the facts were different from those in the pending cause. There the railway company was furnishing all materials and equipment for track maintenance; required the contractor to take out insurance to comply with Ohio State Compensation Laws, and the railway company was to pay the premiums and also pay the contractor any sums adjudged against it for the death of or injuries to its employees. The court held, logically, that the purpose of the contract was to substitute the liabilities of the Ohio State Compensation Act for those created by the Federal Employers' Liability Act, and as such was void by the terms of said section 5.

A careful reading of the contract in the present case convinces us that there was no purpose or intent to

circumvent the provisions of the Federal Employers' Liability Act, but that it was entered into as an ordinary business transaction and without design to evade any responsibilities, or escape any liabilities, imposed by any competent lawful authority. Hence we are of opinion that the *Margue* case, *supra,* is not controlling here; but that the decision of the United States Supreme Court, in *Chicago, R. I. & P. Ry. Co. v. Bond, supra,* is authority for our holding that the contract in question is not void under said section 5. Our conclusion is that the cause was fairly submitted to the jury; that the verdict was warranted by the law and the evidence, and that the court erred in setting it aside.

The order awarding the new trial is reversed, and the cause is remanded with directions to the trial court to enter judgment on the verdict.

*Reversed and remanded with directions.*