(No. 26002.—

THE POSTAL TELEGRAPH SALES CORPORATION *et al.* Plaintiffs in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*— (WILLIAM B. LEWIS, Defendant in Error.)

*Opinion filed Sept. 15, 1941—Rehearing denied November 12, 1941.*

Farthing, J., dissenting.

Angerstein & Angerstein, Charles Wolff, and Marion J. Hannigan, of counsel,) for plaintiffs in error.

Irving M. Greenfield, for defendant in error.

Mr. Justice Gunn delivered the opinion of the court:

William B. Lewis, defendant in error, was injured while making a sale of an electric clock which he was disposing of on commission for the Postal Telegraph Sales Corporation. This company purchased the clocks from the Postal Telegraph Cable Company, both of which companies are petitioners. Respondent filed his claim against both corporations as an employee within the meaning of the Workmen's Compensation act, and the arbitrator entered an award in his favor against both petitioners. On petition for review to the Industrial Commission and *certiorari* to the circuit court of Cook county, the award was confirmed. No question of the amount of the award is involved. A petition for a writ of error to this court was allowed.

The Postal Telegraph Sales Corporation is engaged in the sole business of marketing clocks. It has no cars, vehicles, buildings, warehouses or electric equipment. Sales

territory is in charge of a field representative, and each field representative has a number of supervisors under him. The central field division includes Illinois, Indiana, Wisconsin, Iowa, Minnesota, and Missouri, and the supervisor has charge of the sales in a particular area. The field representative in charge of the division of six States was Raymond A. Lasance.

On July 19, 1939, the respondent answered an advertisement for a salesman, which had been placed in the paper by the Postal Telegraph Sales Corporation. He met Lasance, who referred him to Harold Altschuler, who was the supervisor. The articles sold were two different types of clocks. Respondent was to work upon a commission basis entirely and pay all of the expenses of transportation. The clocks were delivered to him as required. He signed an agreement under which he received a commission of $3.75 per clock when sold for cash, and when sold on the installment plan the commission was $2.75 per clock. When sold on the installment plan under certain conditions, and the initial payment did not equal twenty per cent of the purchase price, the initial commission would be charged back against his account, and deducted from other earned commissions; when in excess of forty per cent was paid he received fifty cents per clock as a bonus. Respondent was to furnish his own car. The agreement contained instructions requiring all city ordinances be observed in installing clocks, and to follow regulations requiring the employment of licensed electricians, but salesmen were specifically prohibited from personally installing the clocks.

Lewis sold clocks on the commission basis until August, 1939, when, because of his satisfactory work, he was appointed a supervisor, and as such he received a commission of $7 on cash sales and $6 on the time sales for the higher priced clocks, and was paid in the same manner in proportion for the lower priced clocks. In addition to a commission on sales personally made, he had a right to and

did appoint other salesmen, and from their sales he obtained an additional $1.50 on the highest priced clocks and $1.10 on the lower priced clocks as an over-riding commission. He was authorized to discharge such salesmen, if he desired. On October 6, 1939, while assisting one of his salesmen to make a sale in Beloit, Wisconsin, he was injured while climbing up a ladder to demonstrate how the clock would look on the wall, when installed.

The clocks belonged to the Postal Telegraph Cable Company, which allowed the Postal Telegraph Sales Corporation a commission of twenty per cent on all gross sales of merchandise. The cable company paid freight, drayage, handling charges and shipped clocks to the sales corporation; the respondent and his salesmen were accountable for the clocks they delivered or for the money they received from the sale of the clocks. The checks were made payable to the Postal Telegraph Cable Company, which issued a receipt for the amount due on contract made with the sales corporation. Respondent made collections on deferred payments and remitted them to the cable company.

Three questions are presented: (1) Whether the respondent was an employee or an independent contractor; (2) whether the Postal Telegraph Sales Corporation, from the character of its business, was subject to the terms and provisions of the Workmen's Compensation act, and (3) whether respondent was an employee of petitioner the Postal Telegraph Cable Company.

In a given case, under the facts, whether a person is an employee or an independent contractor is sometimes difficult to determine. This results from the fact that elements pertaining to both relationships may occur without being determinative of the relationship, and no specific rule has been adopted by this court applicable to the facts of all cases. An independent contractor has been defined as one who renders service in the course of the occupation, and represents the will of the person for whom the work

is done only with respect to the result, and not the means by which that result is accomplished. (*Ferguson & Lange Foundry Co.* v. *Industrial Com.* 346 Ill. 632; *Hartley* v. *Red Ball Transit Co.* 344 id. 534; *Besse* v. *Industrial Com.* 336 id. 283; *Lutheran Hospital* v. *Industrial Com.* 342 id. 325.) It has also been held that if the person for whom the service has been rendered retains the right to control the details of the work and the method or manner of its performance the relation of employer and employee exists. (*Ferguson & Lange Foundry Co.* v. *Industrial Com. supra; Hartley* v. *Red Ball Transit Co. supra; Nelson Bros. & Co.* v. *Industrial Com.* 330 Ill. 27.) The right to control the manner of doing the work, not the actual control, is an important if not the principal consideration which determines whether the worker is an employee or an independent contractor. (*Ferguson & Lange Foundry Co.* v. *Industrial Com. supra; Besse* v. *Industrial Com. supra; Nelson Bros. & Co.* v. *Industrial Com, supra.*) Some of the earlier cases define an independent contractor as one who undertakes to produce a given result without in any way being controlled as to the method by which he attains that result. (*Amalgamated Roofing Co.* v. *Travelers Ins. Co.* 300 Ill. 487; *Franklin Coal and Coke Co.* v. *Industrial ·Com.* 296 id. 329.) So, also, it has been held that if in the performance of the work he is not under the control of the employer he is an independent contractor. (*Bristol & Gale Co.* v. *Industrial Com.,* 292 Ill. 16.) The rule of non-liability of independent contractors has been applied to both negligence and compensation cases.

The different matters affecting the test applied in the cases are instructive. In *Ferguson & Lange Foundry Co.* v. *Industrial Com. supra,* the injured man hauled cinders from the plant of the respondent; he worked when he pleased; he had a right to sell the cinders without accounting for the proceeds; the respondent did not concern itself with the details of the work, but the party injured was

charged only with getting the cinders away at a given price, and it was held that the fact at different times he was requested to get waste material from a certain part of the premises before attention was given to other parts was not a sufficient direction to make him an employee. In *Besse* v. *Industrial Com. supra,* where a plasterer agreed to do certain work for a certain price, and with the consent of the defendant did some additional work on a chimney, consideration was given to the fact that the injured person employed assistants when necessary, and furnished tools and materials, and only had a responsibility for the results and not the manner of attaining them. These facts were deemed material in determining that he was an independent contractor. On the other hand, in *Bristol & Gale Co.* v. *Industrial Com. supra,* where the deceased was paid a weekly sum for his services, with a horse and wagon, and was subject to the respondent's order as to the details of the work and could be discharged at any time, and was required to be at the place of business every day, with no agreement to accomplish any specified result, these facts were considered material in determining that he was an employee. In *Nelson Bros. & Co.* v. *Industrial Com. supra,* where one Drury operated a carpenter shop and accepted work from all who desired his services, and employed men to assist him, and did the work as he saw fit, and all he was required to do was to finish the work at the time and according to directions of the respondent, these facts were held determinative of the independent contractor relationship, notwithstanding Nelson Bros. & Co. had the right to determine how much work they would give him, and could terminate a contract during the progress of the work. Similar illustrative facts may be gleaned from the other cases. The important point disclosed by the cases is that an independent contractor may do the work in the manner he see fit; may employ his own assistants; may work when he pleases and be paid either a lump sum

or by piece work, or by the day or week, if it is only a result he is accomplishing, which must meet with the approval of the other party. This appears from many cases to be one of the principal tests, and the cases cited by defendant in error are easily distinguishable.

*Swift & Co.* v. *Industrial Com.* 350 Ill. 413, and *Meyer* v. *Industrial Com.* 347 id. 173, were cases in which the question of independent contractor was not raised. The cases of *Cinofsky* v. *Industrial Com.* 290 Ill. 521, *Franklin Coal and Coke Co.* v. *Industrial Com. supra, Bristol & Gale Co.* v. *Industrial Com. supra, Stellwagen* v. *Industrial Com.* 359 Ill. 557, and *Kehrer* v. *Industrial Com.* 365 id. 378, all recognized the general rule pointed out above for ascertaining whether a person was an employee or an independent contractor, and did no more than hold that in each case there was sufficient evidence upon which the Industrial Commission could base its finding. No one of those cases involved a situation similar to the one in the present case. The remaining case, *National Alliance* v. *Industrial Com.* 364 Ill. 249, has no application because it was one arising under section 31 of the Workmen's Compensation act, which applies only to the servants of a subcontractor who has not provided protection by compensation insurance. None of these cases affects the general principles applicable to the present situation.

While no decision of this court has been cited as applying to salesmen working upon a commission, this does not mean that all commission salesmen are independent contractors, as each case depends largely upon its particular facts and circumstances. Three decisions of the Appellate Court involving facts quite similar to this case hold the relationship created was that of independent contractor and not of employee. (*Meece* v. *Holland Furnace Co.* 269 Ill. App. 164; *Burster* v. *Nat. Refining Co.* 274 id. 104; *Trust* v. *Chicago Motor Club,* 276 id. 289.) These cases all involved negligence, but other jurisdictions on

similar facts find the relationship created was that of an independent contractor where compensation laws were involved. In *Henry Haertel Service, Inc.* v. *Industrial Com.* 248 N. W. (Wis.) 430, the plaintiff was a monument salesman who worked on a commission; in *Income Life Ins. Co.* v. *Mitchell,* 79 S. W. (Tenn.) 572, the plaintiff sold industrial insurance upon a commission; in *Huebner* v. *Industrial Com.* 290 N. W. (Wis.) 145, the plaintiff solicited subscriptions for a newspaper within a given territory and received a commission; in *Apenese* v. *Department of Labor,* 99 Pac. (2) (Wash.) 629, the deceased had been a lumber salesman working on a commission basis; in *Stockwell* v. *Morris,* 22 Pac. (2) (Wyo.) 189, plaintiff was a washing machine salesman who received a commission on machines sold. In all of these cases there was coöperation between the contracting parties, but not such as to give control over the details of the work. In all of these cases the injured party furnished his own instrumentality for doing business and covering the territory, and in nearly all of the cases the claim was made under the compensation laws. In all of the foreign jurisdictions just cited the rule for ascertaining the distinctions between an independent contractor and employee is substantially the same as in this State.

This case presents the situation of a man desiring to sell clocks, who applies to the owner where a supervisor explains the manner in which clocks are to be sold, the price, the commissions and requirements. He is usually given a demonstration as to the manner of making sales, and from then on works independently of supervision, and ultimately participates in the earnings of the under-salesmen. The defendant in error was paid for results. His territory was defined in advance; he had the right to hire and discharge sub-agents; he was delivered property and made responsible for it; no directions were given him as to how to sell, or to whom; he designates himself as a

"sales supervisor," and the correspondence between him and his superior refers to the arrangement as "our deal." Defendant in error refers to an "employment agreement," but this only appears as a heading to a letter written by him, in which he acknowledges the receipt of certain general orders of the company. This general order refers to persons selling on commissions as "sales people." An unfilled application for a bond on the form of the National Surety Company was offered in evidence, but how it was filled in does not appear. The mere designation at the top of a blank form has no evidentiary value. Some stress is placed upon the fact that deductions were made from the commissions for Federal Old Age Insurance. This is not decisive of the relationship, because the Federal statute defines employment to mean "any service of whatsoever nature." U. S. C. A. title 26, sec. 1607.

We are compelled to the conclusion from a review of the authorities in this State as well as those in other jurisdictions that defendant in error was not an employee within the meaning of the Workmen's Compensation act of the State of Illinois, but in respect to his particular occupation was an independent contractor who was not entitled to make a claim for compensation. The decision of this question makes it unnecessary to determine the precise relationship between the Postal Telegraph Sales Corporation and the Postal Telegraph Cable Company, or to pass upon the other questions raised by plaintiff in error.

The order of the circuit court of Cook county is reversed and the cause is remanded, with directions to set aside the award in favor of defendant in error made by the Industrial Commission. *Judgment reversed.*

Mr. JUSTICE FARTHING, dissenting.