**Dr. D. J. Louis, Appellee, v. Walter C. Youngren, Jr., and Sims Motor Transport Lines, Inc., Appellants.**

Gen. No. 46,760.

First District, Third Division.
December 5, 1956.
Released for publication January 2, 1957.

Pretzel & Stouffer, of Chicago, for Sims Motor Transport Lines, Inc., appellant; Eugene P. Kealy, of Chicago, for Walter C. Youngren, Jr., appellant.

Francis J. Gariepy, of Chicago, for appellee.

JUDGE KILEY delivered the opinion of the court.

This is a personal injury action arising from a collision between an automobile driven by plaintiff and a truck driven by defendant Earle, owned by defendant Youngren, and leased to defendant Sims Motor Transport Lines, referred to herein as Sims. Judgment for $11,650 was entered upon a verdict against all three defendants. Only Youngren and Sims have appealed.

Plaintiff was driving west on 95th Street in Chicago on March 30, 1950. He stopped his car for a traffic signal at the intersection of 95th and Halsted, and it was struck from behind by the truck. Earle was employed by Youngren to drive the truck, one of four owned by Youngren. Earle did not receive a regular salary but was paid 25 per cent of the gross revenue of the truck while he was driving it. On the day of the accident Youngren received a call from Sims requesting a truck to haul a load of steel from the Wisconsin Steel Company in South Chicago, Illinois to Springfield, Ohio. Earle was in the office at the time, Youn-

gren sent him to haul the steel, and Earle drove directly to the Wisconsin Steel Company plant. While the truck was being loaded, signs were affixed to each side of the truck. At the top of the signs were the words "trip lease"; under that was the name of "Sims Motor Transport Lines, Inc."; and under that in smaller letters the permit numbers issued to Sims by various states and the Interstate Commerce Commission.

From the Wisconsin Steel plant, Earle drove to the Sims office where he was given the "trip lease" agreement and the bills of lading, and was told the quickest route to Springfield, Ohio. He then drove west toward the Youngren terminal with the intention of picking up his clothes to get them washed at his home in La Crosse, Indiana, where he intended to stop overnight on the way to Springfield. It was while he was on his way to the Youngren terminal that the accident occurred. Following the accident, Earle continued on his journey, made delivery of the steel at Springfield, and then returned to the Youngren terminal at Harvey, Illinois.

Negligence in the operation of the truck and plaintiff's use of due care are not disputed, nor is any objection made to the amount of the verdict. The sole question presented is whether Youngren or Sims or both are responsible for plaintiff's injuries. Youngren contends that under the terms of a written "trip lease" agreement, leasing the truck, Sims was in control and had direction of the vehicle at the time of the accident, and is consequently responsible. Sims contends that Earle was not its agent since he was in the general employment of Youngren, and that Youngren is therefore responsible.

■ The trip lease was for a single trip and Youngren was not exclusively a hauler for Sims. Youngren, as owner of the truck and employer of the

201

driver, necessarily had a master's control over the truck at the time of the accident. He was responsible under the lease for the maintenance of the truck. The driver reported to him and delivered the way bill and trip lease to him. There is no indication that Sims had any right to tell Earle how to drive the truck, but only where to drive it, and Sims had no right to discharge Earle. In hauling the freight for Sims, Earle was doing the work for which Youngren employed him, he was paid by Youngren, and he could be discharged by Youngren, and therefore Earle was under Youngren's control. The only control exercised by Sims was that of engaging Youngren to deliver the steel to its Ohio destination, and Sims had no control over the means of accomplishing this result. Under these circumstances, Youngren is an independent contractor. (Postal Tele. Sales Corp. v. Indus. Comm., 377 Ill. 523; Densby v. Bartlett, 318 Ill. 616; Haney v. Northwest Cartage Service Corp., 336 Ill. App. 97; Dean v. Ketter, 328 Ill. App. 206. See Ill. Law and Practice, Vol. 4, page 352, Sec. 164.)

Sims had a permit to carry goods in interstate commerce and without it the trip in question could not lawfully have been made. Youngren did not have such a permit and had to lease the truck to Sims so that an interstate haul could be made under the latter's permit. Sims knew this and could foresee the danger of transportation with defective equipment. We think this renders Sims liable for the negligence of the driver. Sims may not escape its responsibility to the public by hiring an independent carrier to haul under Sims' permit from the Commerce Commission. (Venuto v. Robinson, 118 F.2d 679; Hodges v. Johnson, 52 F. Supp. 488.) This rule is noted in "Restatement of the Law of Torts," page 1149, Section 428, as follows: "An individual or a corporation carrying on an activity which can be lawfully carried on only

under a franchise granted by public authority and which involves an unreasonable risk of harm to others, is subject to liability for bodily harm caused to such others by the negligence of a contractor employed to do work in carrying on the activity." The rule is also supported by the Illinois cases. (Ohio & M. R. Co. v. Dunbar, 20 Ill. 623; Boyd v. Chicago & N. W. Ry. Co., 217 Ill. 332, 336–337; Orange v. Pitcairn, 280 Ill. App. 566, 572.) We agree with the statement in the Venuto case (118 F.2d 679, 682) that truck travel upon the highways is attended with "very considerable risk" and comes within the meaning of the rule.

Youngren argues that the instant lease was subject to I.C.C. rules which imposed on Sims the obligation of "exclusive possession, control, and use" of the truck and "the complete assumption of responsibility in respect thereto" and that these rules relieve Youngren, as lessor, from all responsibility to the public, notwithstanding state law to the contrary. The instant lease was not made in compliance with the rules of the Interstate Commerce Commission cited to us by Youngren in American Trucking Associations, Inc. v. United States, 344 U. S. 298. Those rules were "in effect adopted" by a Commission report May 8, 1951 (344 U. S. 307), and were not made effective until an even later date. That the rules were not effective at the time of the accident is also plain from the instant lease, which covers a single trip—the rules cited require a lease of not less than 30 days. § 207.4 (a) (3), 52 M.C.C. 744.

Since the rules relied on by Youngren were not in effect when the lease was made, they did not become terms of the lease, and the relationship of the parties is rightly determined by the actual circumstances of the engagement. Without conceding that the rules relied upon by Youngren would preclude his liability, in the absence of such rules it is clear that Illinois law

is decisive of the question of Youngren's liability for the negligence of Earle. This same conclusion is evident in Venuto v. Robinson, 118 F.2d 679, and War Emergency Co-Op Ass'n v. Widenhouse, 169 F.2d 403, cert. denied, 335 U. S. 898, both decided before the I.C.C. rules cited by Youngren were effective, and in both state law was applied to find the relationship of independent contractor. (See also, Hodges v. Johnson, 52 F. Supp. 488.)

■ Under Illinois law Youngren is responsible for the negligence of his servant, Earle. (Densby v. Bartlett, 318 Ill. 616; Haney v. Northwest Cartage Service Corp., 336 Ill. App. 97.) There is no doubt that a servant in the general service of one may be transferred for a specific service under the control of another so as to become the latter's servant for that specific work. (Watson v. Trinz, 274 Ill. App. 379, 393.) In MacNeal, Inc. v. Timber Structures, Inc., 6 Ill.App.2d 323, this court found such a situation. It was held that since the lessee of equipment could have hired either men recommended by the lessor or others as the lessee chose, and since the lessee's foreman and superintendent directed the work, the crew, though in the general employ of the lessor, was under the direction and control of the lessee. In the present case, Sims had no such control of Earle, nor could it select its own driver, and we distinguish the MacNeal case on that basis.

The facts in the instant case also distinguish it from cases like Kemp v. Creston Transfer Co., 70 F. Supp. 521, and Gassaway v. Barry, 123 F. Supp. 670, where the lease itself expressly provided that the lessee shall have complete possession, control and dominion of the equipment, and there were additional facts which negatived the idea that the lessor was an independent contractor.

Youngren contends that the exclusion of the trip lease from evidence was reversible error since the lease would have established as a matter of law that Earle was not the agent of Youngren at the time of the accident. The proffered lease, which was not admitted, provided that Youngren should maintain the truck in good working order, pay all fines for violating regulations or laws, and "while the foregoing equipment is under the direction and control" of Sims "it shall be operated only by the lessor or his representative while in the employ of Sims . . . ." The lease did not provide a "certain route" and Earle was not directed to take any specific route. He was told the most direct route, but from all that appears he was free to select the route that he took. The lease did not oblige Sims to employ and pay its own driver, but on the contrary provided that only Youngren or his representative should operate the truck. The lease itself supports the other evidence on which Youngren's liability is based, and it could have shown no more than the facts in evidence had already shown. Consequently, the lease would have been cumulative evidence, and the error, if any, in the ruling was harmless.

In holding Sims and Youngren jointly liable we distinguish Haney v. Northwest Cartage Service Corp., 336 Ill. App. 97, where, under similar circumstances, this court allowed judgment to be obtained only against the owner of the truck. In that case there was no interstate commerce involved and the owner could have done the hauling lawfully without the cooperation of the lessee. We do not hold Sims liable as an employer, but because it was the owner of the I.C.C. permit. (Venuto v. Robinson, 118 F.2d 679; Hodges v. Johnson, 52 F. Supp. 488.)

Sims contends that Earle's deviation from the most direct route to Springfield took him out of Sims' con-

trol and exculpates it from liability for his negligence. We do not hold Sims liable because it was in control of Earle, but if there was a substantial deviation Sims should nevertheless be allowed to raise this point if Youngren does not. Under the common law rule we apply, Sims is liable for its contractor's negligence in using the franchise. If Earle was not under the contractor's control, his negligence would not be imputed to the contractor and Sims in turn would not be liable. It follows that the law as to deviation applied to the master-servant relation should be applied to determine Sims' responsibility.

Applying this law, if Earle were trying to hold the master, Sims' contention might be valid, but when a third party seeks to go through the agent to the master the courts hesitate to find the agency had been suspended as a result of the servant's slight deviation. (Parotto v. Standard Paving Co., 345 Ill. App. 486, 494.) The facts here are not in dispute, and it becomes the duty of the court to determine whether the servant had left the employ of the master. We think reasonable men would agree that in the absence of an order to take a specific route, there was no substantial deviation when Earle drove to the Youngren terminal to pick up his clothes and then drove to La Crosse, Indiana, to stay overnight at his own home. Therefore, the court was not in error in refusing to give the requested instructions on deviation.

Sims also contends that it was error for the court to refuse instructions which would relieve Sims of responsibility if defective brakes were the cause of the accident. We do not consider this refusal error. As we have already pointed out, Sims is jointly responsible for the admitted negligence which caused the collision. Even if defective brakes were the sole cause, Sims as lessee and owner of the Interstate Commerce

Commission permit is jointly liable with Youngren for the result.

■ The court gave the following instruction:

"The court instructs you that when a tort or wrong is committed by an agent or employee in the course of his employment and while pursuing his employer's business, the employer will be liable for any damages resulting from such tort or wrongful act although it is done without the employer's knowledge or consent unless the wrongful act is a willful departure from such employment or business."

Youngren contends this instruction was improper because it did not set out all the elements which should be included in such an instruction on agency and the jury might assume from the instruction that the fact alone of Earle's employment made Youngren liable. True, the instruction seems to exculpate Sims from liability under the theory of respondeat superior, but since, under the uncontradicted evidence, Earle was doing the business of Youngren, the independent contractor, we have held, as a matter of law, that Earle was the servant of Youngren. The instruction was therefore, at worst, no more than surplusage, it could not have been prejudicial to Youngren, and we find no merit in the contention. Under what theory the jury found Sims liable we need not determine. The result is correct, and we are not concerned with the reasons of the jury.

For the reasons given, the judgment is affirmed.

Affirmed.

FEINBERG, P. J. and LEWE, J., specially concurring:

We think there is another substantial basis for holding Youngren liable. The complaint charged that the

defendants "drove said motor vehicle with inadequate, improper, poor and defective brakes which were unable to control the movement of said motor vehicle, . . . in violation of the statute in such case made and provided." Chapter 95½, § 211 of the Uniform Traffic Act, Ill. Rev. Stat. 1955, provides:

"Every motor vehicle, other than a motorcycle, when operated upon a highway shall be equipped with brakes adequate to control the movement of and to stop and hold such vehicle, including two separate means of applying the brakes, each of which means shall be effective to apply the brakes to at least two wheels. If these two separate means of applying the brakes are connected in any way, they shall be so constructed that failure of any one part of the operating mechanism shall not leave the motor vehicle without brakes on at least two wheels."

Whether the truck had defective brakes became a question of fact for the jury.

The evidence discloses that at the scene of the accident, and immediately following the collision, Earle, the driver of the truck, stated to plaintiff, when asked why he hit him, "I can't help it. I applied the brakes and the brakes won't hold." On cross-examination of plaintiff, he further testified that Earle stated at the time, "My brakes were defective; they wouldn't hold and I couldn't stop the truck." The evidence was received without objection either on direct or cross-examination.

This evidence, in connection with the fact that plaintiff's car was at a standstill, waiting for a traffic light to change, when it was struck from behind by the truck, was sufficient to make it a question of fact to be determined by the jury. If the jury believed, as it had a right to, that the brakes were defective, then Youngren, as owner of the truck, in allowing the truck to be

driven by his servant in the highly hazardous business of interstate commerce upon the public highways, is liable for injury resulting from the defective condition of the brakes. Rotche v. Buick Motor Co., 358 Ill. 507, 514, and cases there cited.