**J. B. DORMER, Appellant,**

v.

**SINGLETON FARM AND RANCH, Appellee.**

No. 10887.

Court of Civil Appeals of Texas.

Austin.

Nov. 1, 1961.

Martin & Martin, Hillsboro, for appellant.

Rogan B. Giles, Austin, for appellee.

HUGHES, Justice.

This is a venue appeal. Appellee is Mrs. Lucille V. Singleton, a feme sole, who engages in the business of farming and ranching under the name of Singleton Farm and Ranch. She sued appellant, J. B. Dormer, to recover the balance due ($791.44) upon a promissory note, in the sum of $1,650, payable at the Blanco National Bank, Blanco, Texas, executed by appellant.

Appellant filed his plea of privilege to be sued in Hill County, the county of his residence. On the venue hearing, appellant filed a trial amendment to his plea of privilege in which he denied, under oath, the execution by him or by his authority of the instrument upon which appellee's "first amended original petition is founded. * * *"

The plea of privilege was overruled.

Appellant's first point is that the evidence was insufficient to support the implied finding of the Trial Court that appellant executed the note in suit.

Upon the filing of the trial amendment by appellant, adverted to above, appellee filed her second amended petition and amended controverting affidavit in which, for the first time, the correct date of the note was pleaded. No complaint of these proceedings is made.

Appellant did not testify.

Mr. Foster Terrell Smith testified for appellee in part, as follows:

"Q. Are you familiar with a man by the name of J. B. Dormer? A. Yes, sir, he lives up near Hillsboro, the way I recollect it.

"Q. All right, sir. Did Singleton Farm & Ranch ever have any business transaction with Mr. Dormer while you

were working with Singleton Farm and Ranch? A. Yes, sir, we sold and delivered to Mr. Dormer several thousand turkey poults in the spring of '57, I believe in May, if my memory holds right.

\*   \*   \*   \*   \*   \*

"A. Well, as customary with all my—routine as far as delivering turkey poults is concerned, I delivered the turkey poults first by the feed store, which happened to be a Ful-O-Pep Feed Company—I can't remember the name, but there a man accompanied me out to this fellow's farm, to show me where it was, and if I remember the day, it was a day about like today, rainy, and this man Dormer had several of his neighbors to help him put the poults down, and I backed up to the window—the windows in the turkey house, I remember, were along the back and we loaded the turkey poults through the windows into the back of the house, and he had it compartmentalized, and each compartment had a brooder in it, and we put the regular number of poults under each brooder, and I was there until all the poults were put down, at which time he ascertained the count, and then he signed a receipt for the poults, and, to the best of my knowledge and belief, at the same time he signed a note, which was customary, we always delivered—never failed to have a man sign a note at the same time he signed the receipt acknowledging receipt of the poults."

Mr. Smith testified that he saw appellant sign the receipt, and he identified the receipt in evidence as bearing appellant's signature.

Regarding the note, Mr. Smith testified: "Q. (Mr. Giles) All right. Now I'll hand you this other document, which has been identified as Plaintiff's Exhibit No. 1, and ask you if you recognize that. A. (The witness) Yes,

sir, that's the normal procedure. We have a note signed just like that every time we have a receipt signed.

"Q. Did you see Mr. Dormer actually sign that note, yourself? A. To the best of my knowledge and belief, I did.

"Q. Well, now, to the best of your— A. To the best of my knowledge and belief, this was 1957, and I've been out of the turkey business, I think I went out, I think I quit—I separated from Bob's business about June, so, to the best of my knowledge and belief he signed that note.

"Q. Did he sign any instruments while you were there—Now, I understand it's been three years ago—Did he sign any instruments in your presence? A. Well, I'm sure he signed both of them, just as sure as I'm sitting here."

Both the note and receipt were offered in evidence. Appellant's signature on the receipt, having been positively identified by Mr. Smith, was subject to comparison by the Court with the signature on the note. Without reproducing the signatures we say with assurance that to a layman the signatures appear to have been made by the same person.

■ Independently of this, we are of the opinion that the uncontroverted testimony of Mr. Smith supports the finding of the Trial Court. The witness testified to circumstances under which it was customary to take a note from a purchaser such as appellant was.

It is to be noted that Mr. Smith did not testify from "information and belief." He testified that "to the best of my *knowledge* and belief," appellant signed the note. Testimony based on "knowledge" is of high standing. The "belief" which the witness expressed was, we think, properly attributed to his "knowledge" in the absence of any objection to its admissibility.

Appellant's second point is that there is no evidence that Blanco, Texas, is in Blanco County.

Factually this point is correct. We overrule it, however, upon the authority of Harper v. Killion, 348 S.W.2d 521, 523, Texas Supreme Court. There the Court held that a district court sitting in Cherokee County could "judicially notice the certain and indisputable fact of common knowledge that the entire city of Jacksonville is located in such county * * *." Rusk, not Jacksonville, is the County Seat of Cherokee County.

If the district court of Cherokee County judicially knows that the entire city of Jacksonville is located in such county, then we know of no reason, and do not think there should be any sufficient reason, for holding that the district court sitting in Blanco County does not judicially know that the entire City of Blanco is located in such county.

Blanco was the first County Seat of Blanco County. Later, Johnson City became its County Seat. From these historical facts, we probably could derive further judicial notice that Blanco was in Blanco County. We do not, however, deem it necessary.

Appellant's last point is that appellee's controverting affidavit was not signed by appellee, but was signed by the "son of and agent for" appellee.

This point is overruled. Rule 14, Texas Rules of Civil Procedure, provides that any party to a suit may make a necessary or proper affidavit by his agent. The affidavit here recites the fact of agency and that the son and agent was "personally cognizant of the entire transaction made the basis of this suit, and that the allegations, denials and facts set out in the foregoing controverting plea are true and correct."

No error appearing, the order appealed from is affirmed.

Affirmed.