**INTERCOAST JOBBERS & BROKERS, Appellants,**

v.

**Clyde E. BARBER, Appellee.**

No. 5841.

Court of Civil Appeals of Texas.

El Paso.

Dec. 14, 1966.

Rehearing Denied Jan. 4, 1967.

Shafer, Gilliland, Davis, Bunton & Mc-Collum, and Ray Stoker, Jr., Odessa, for appellants.

Warren Burnett and Robert D. Pue, Odessa, for appellee.

OPINION

CLAYTON, Justice.

This is an appeal from an order of the trial court overruling a plea of privilege. Appellee filed suit in Ector County, Texas against appellant for the death of appellee's wife in a truck-automobile collision on November 30, 1963. Appellant Intercoast Jobbers & Brokers presented its plea of privilege to be sued in Dawson County, Texas, where the principal place of business of Intercoast is located at Lamesa, Texas. The trial court overruled the plea of privilege and Intercoast appealed.

Appellant presents two points of error: First, error in overruling the plea of privilege because the evidence at the hearing on the plea established as a matter of law that Alex E. Daugherty, Intercoast's employee, was outside the course and scope of his employment at the time and place of the accident; and second, error in overruling the plea because the record contains no evidence that an act or omission of negligence on the part of Daugherty or Intercoast occurred in Ector County, Texas.

 No request for findings of fact or conclusions of law was made, and none were filed by the court. Under such circumstances,

"* * * The trial court's judgment * * * implies all necessary fact findings in support of the judgment. In seeking to determine whether there is any evidence to support the judgment and the implied findings of fact incident thereto 'it is proper to consider only that evidence most favorable to the issue and to disregard entirely that which is opposed to it or contradictory in its nature.'" (Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609, 613, 23 A.L.R.2d 1114 (1951).

And:

"On appeal from an order overruling a plea of privilege every reasonable intendment must be resolved in favor of the trial court's judgment." (Citing cases) (James v. Drye, 159 Tex. 321, 320 S.W.2d 319, 323 (1959).

Briefly, the circumstances, taken from the Statement of Facts, are: Except for about six or eight weeks, Alex E. Daugherty, the driver of the truck, had been an employee of Intercoast Jobbers & Brokers, grain and produce truckers, about five or six years, and had just returned to work for appellant immediately before the accident in question. On the day of the accident, Daugherty was the driver of a company tractor and trailer loaded with grain, to be carried from Three Leagues, Texas, to California. His home was in Odessa, Texas, and he had been given permission by his employer to spend the night there and start from there for California the next day. This concession was not unusual, although he had no duties to perform in Odessa for his employer. When he approached Odessa on his way to his home, he took the by-pass route around Odessa on his way to his home to miss the lights and traffic in town, and he got on the "Andrews Highway". Normally, in going to California from where the truck was loaded in Three Leagues, Texas, Daugherty would have gone straight through Odessa on Highway 30, if he were not going to his home. But by the time Daugherty got the trailer loaded and started out from Three Leagues, Odessa would probably have been a normal stopping place for the night, whether he lived there or not. At any rate, on the occasion of the accident, in order to reach his home, Daugherty, about 4:45 in the evening, turned left on to 81st Street from going north on the Andrews Highway, crossed the south-bound highway and entered the intersection of 81st Street with the service road paralleling the Andrews Highway, when there was a collision between the tractor-trailer and an automobile being driven north on the service road by Mrs. Barber, who was killed. There was a "yield right of way" sign facing Daugherty at the intersection of 81st Street and the service road, and Daugherty

didn't come to a complete stop at the sign, but to a "slow running stop", "barely rolling". He stated that Mrs. Barber was "going pretty fast", a matter that he judged by her skid marks which "looked to me in excess of eighty feet", and "how far she skidded sideways and the damage she done to the truck and the car and how far she slid my truck sideways." However, Daugherty states that he didn't actually see the car of Mrs. Barber until he heard her brakes, and the collision occurred immediately after that. Daugherty testified that the place where the accident occurred was outside of, and north of Odessa, about four miles from downtown Odessa.

█ As to the first point of error, relative to course and scope of employment at the time and place of the accident, the controverting plea to the plea of privilege relies upon section 9a of Article 1995, Vernon's Ann.Tex.Civ.St., the venue statute. That section provides:

"9a. Negligence.—A suit based upon negligence per se, negligence at common law or any form of negligence, active or passive, may be brought in the county where the act or omission of negligence occurred or in the county where the defendant has his domicile. The venue facts necessary for plaintiff to establish by the preponderance of the evidence to sustain venue in a county other than the county of defendant's residence are:

"1. That an act or omission of negligence occurred in the county where suit was filed.

"2. That such act or omission was that of the defendant, in person, or that of his servant, agent or representative acting within the scope of his employment.

"3. That such negligence was a proximate cause of plaintiff's injuries."

Section 9a is thus an exception to the general venue rule. The law applicable to an exception is stated in Goodrich v. Superior Oil Co., 150 Tex. 159, 237 S.W.2d 969, 972 (1951):

"The general rule of venue is, of course, that a defendant shall be sued in his own county, and however many and important are the exceptions contained in the statute, an equal doubt between the exception and the rule is to be resolved in favor of the rule. Stated differently, the application of the exception must clearly appear." (Citing cases).

Such exceptions cannot be established by implication or doubtful construction. Saigh v. Monteith, 147 Tex. 341, 215 S.W.2d 610, 613 (1948).

█ Plaintiff's original petition charges negligence on the part of Daugherty as agent, servant and/or employee of Intercoast. It follows that plaintiff must prove that Daugherty was in the course and scope of his employment in order to make Intercoast liable, and since the trial court's judgment overruled the plea of privilege of Intercoast, every reasonable intendment must be resolved in favor of such judgment. Appellee relies strongly on the decision in Louis v. Youngren, 12 Ill.App.2d 198, 138 N.E.2d 696, 701, an Illinois case decided in 1956, where the facts were similar, from which the following is quoted:

"* * * We think reasonable men would agree that in the absence of an order to take a specific route, there was no substantial deviation when Earle drove to the Youngren terminal to pick up his clothes and then drove to La Crosse, Indiana, to stay overnight at his own home. Therefore, the court was not in error in refusing to give the requested instructions on deviation."

However, there is no showing that the Illinois provisions with regard to deviation and departure in such cases are the same as those in Texas. Appellant relies upon Southwest Dairy Products Co. v. De Frates, 132 Tex. 556, 125 S.W.2d 282, 283, 284, 122 A.L.R. 854 (Com.App., 1939, adopted

opinion) where it is held, in answer to a certified question:

"* * * It is the firmly settled rule that when a servant completely departs from his work to accomplish some purpose of his own not connected with his employment, the relation of master and servant is thereby temporarily suspended and the master is not liable for his acts during the period of such suspension."

This case differentiates certain cases which are relied upon as exceptions to the general rule:

"Many of the cases which are relied upon as departures from, or exceptions to, the above rule may be grouped into two classes, first, those in which the departure was not wholly disconnected from the employment, but in which there was a mingling of the personal purpose of the servant with the doing of the master's work, and, second, those in which the departure was but a deviation and not a complete turning aside."

The De Frates case is cited favorably in the case of Frontier Theatre v. Whisenant, 291 S.W.2d 395 (Tex.Civ.App., 1956; n. w. h.), and Mitchell v. Ellis, 374 S.W.2d 333 (Tex.Civ.App., 1963, wr. ref.), as well as others.

We are inclined to the opinion that the case before us could fall into at least the first of the two classes of cases set out in De Frates, supra, as cases relied upon as departures from, or exceptions to, the general rule of temporary suspension of the master and servant relationship. The court in De Frates speaks of an exception to the general rule as one in which "the departure was not wholly disconnected from the employment", as distinguished from the case before it, which was a case "of a complete departure for a purpose not connected with the employer's business and not with the employer's consent". In the case before us we have, in the deposition testimony of one of Daugherty's employers, the following questions and answers which serve to dif-

ferentiate our case from that described by the court in De Frates:

"Question: And, he went from here to Odessa, as far as you know, with the intention of spending the night at his house?

Answer: Yes. I gave him permission to spend the night.

Question: And, based on what you know, he was going to leave for California the next morning?

Answer: Yes, sir.

Question: And the accident happened there in Odessa while this particular transaction was going on? That is, leaving here going to California?

Answer: Yes."

* * * * * *

"Question: So far as the use of the truck goes, on the day that the accident happened, there is no question or any implication about him having your permission to use the truck, is there?

Answer: Well, I gave him permission to go by the house."

* * * * * *

"Answer: But I did give him permission to go to the house. He had no duties to do at the house or anything like that. He had been gone for probably a week and had to go by the house and get some clothes or something and I told him to go by his home and get the clothes and spend the night and to leave tomorrow morning."

However, the same employer did testify that Odessa was not on the route from Lamesa, his place of business, to California; and that the employee, Daugherty, actually had no duties to perform for the employer in Odessa on the day of the accident.

We refrain from rendering a definite decision on the foregoing portion of section 9a of Article 1995, V.A.T.S., for the reason that appellee has, in our opinion, wholly

failed to establish another necessary element of 9a as an exception to the general venue rule, to-wit: that an act or omission of negligence occurred in the county where suit was filed. Under the circumstances of this case, this would have to be an act or omission of negligence of the servant, Daugherty, occurring in Ector County, where suit was filed. We have carefully examined the record before us, and believe the following constitutes the entire testimony as to where the collision (if negligent on the servant's part), which has been previously described, occurred:

Mr. Clyde Barber, widower of deceased:

"Question: Where was your wife going when the accident happened?

Answer: She was coming out there to pick me up at quitting time."

\* \* \* \* \* \*

"Question: What time did you get off that day?

Answer: 5:00 o'clock.

Question: Isn't that about what time the accident happened?

Answer: Yes, sir. She lacked just two blocks getting to me.

Question: What direction was she going?

Answer: North.

Question: On what highway?

Answer: Well, that's 385 out there.

Question: Is that the Kermit Highway?

Answer. Yes, sir. Kermit Highway. And she was over here on this little service road."

\* \* \* \* \* \*

"Question: She was off of the highway?

Answer: Yes, sir.

Question: And this truck had come off of what?

Answer: It had come off of 385, come straight across like this.

Question: And there was a yield right of way sign for the truck coming onto the access road?

Answer: Yes, sir.

Question: What is the speed limit out there?

Answer: Well, that's a sixty mile zone on that little service road, I think.

Question: Why was she on the access road instead of on 385?

Answer: Well, it was just handier for her to get out of traffic and everything. She just always, it was clear down here. When she come to that little road she always just got on it and then she was through, wouldn't have to work any more crossovers or such like. Just on that side of the road where she was supposed to be."

Mr. Alex Daugherty, driver of the tractor-trailer:

"Question: All right. In other words, they just loaded you out and you left from there and went on. What route did you go from there to Odessa?

Answer: \* \* \* Well, I came west from Three League and hit the Midland and Lamesa Highway and went to Midland, hit Highway 80 and then west to Odessa."

\* \* \* \* \* \*

"Question: The way I understand it, you were—had got to Odessa and you were going north on highway or what would be called the Andrews Highway?

Answer: Right.

Question: And you had turned left and crossed the south bound highway?

Answer: Right.

Question: And the accident happened on the service road?

Answer: Right.

Question: Now, then, what was the name of the street that you were going on?

Answer: 81st Street.

Question: 81st Street?

Answer: Yes, sir.

Question: So it happened at the intersection of the service road—

Answer: And 81st Street.

Question: —running parallel to the Andrews Highway and 81st Street?

Answer: Yes, sir."

\* \* \* \* \* \*

"Question: Where did the accident occur in Odessa? Did it happen in Odessa or outside?

Answer: It happened outside of Odessa.

Question: All right, sir. Where was the place that the accident occurred with relation to Odessa?

Answer: North of Odessa.

Question: All right. How far north of Odessa?

Answer: I imagine it would be approximately four miles from downtown.

Question: All right, sir, on this particular day, what route did you take as you approached Odessa?

Answer: The loop around Odessa. I don't remember the number of it. By pass route.

Question: You turned off to the right and went around Odessa and got on the Andrews Highway?

Answer: Yes, sir.

Question: What was your reason for taking that route?

Answer: Well, it missed the lights and traffic.

Question: All right. Did you take that route so that you could get to your house?

Answer: Yes, sir."

Appellee has cited the 1966 Texas Supreme Court decision in Southwestern Investment Company v. Shipley, 400 S.W.2d 304, 306, as in aid of his position in the case before us that venue has been established in Ector County, of which Odessa is the county seat. He quotes from that decision:

"\* \* \* For many years our courts have taken judicial notice of the subdivision of the State into counties, and also of the location of cities and towns which are county seats. In a number of cases involving obligations performable in a named city or town which was the seat of government for the county of suit, this judicial knowledge has enabled the plaintiff to maintain venue under Subdivision 5 without proving the location of the city or town designated in the contract as the place of performance." (Citing cases).

The Supreme Court in the same case then goes farther:

"\* \* \* Be that as it may, the boundaries of judicial knowledge have now been extended to the point that courts may, in a civil case, judicially notice 'the certain and indisputable fact of common knowledge' that a city is located entirely within a particular county even though the city in question is not the county seat. Harper v. Killion, 162 Tex. 481, 348 S.W. 2d 521. See also Dormer v. Singleton Farm and Ranch, Tex.Civ.App., 351 S.W. 2d 377 (no writ)."

But the cited opinion was written under subdivision 5 of Article 1995, and from the

record in the case before us, the opinion in the Shipley case can be of no appreciable help here, where the testimony showed that the accident occurred, not in Odessa, located in and county seat of Ector County, but at some point outside of Odessa, with no enlightenment as to the county in which the occurrence took place. We believe the case of Miller v. Burke, 401 S.W.2d 852 (Tex. Civ.App., 1966; n. w. h.) to be practically on all fours with the case before us. In that case, an automobile accident case, the appeal of Miller was from an order of the District Court of Harris County (non-jury) overruling his plea of privilege to be sued in Cherokee County, the county of his residence. Complaint was made in appellant's first point of error that appellee had failed to introduce any evidence concerning location and therefore failed to prove by a preponderance of the evidence that the event complained of occurred in Harris County, Texas. The Opinion of the Court of Civil Appeals recites from the case of Lynch v. Millican, 304 S.W.2d 410, the following:

"'It is well settled that with the venue challenged, under proper plea, by one sued without his county, the burden not only to allege, but to prove that the case is within one of the exceptions to the statute rests on plaintiff * * * and to defeat the plea of privilege, he must both plead and prove the facts relied on to bring the case within one of the exceptions. The issue made is tried in the ordinary way, and the truth as to the facts in issue is to be ascertained by the introduction and weighing of evidence offered by both sides. In short, a plaintiff seeking to maintain venue in another county must prove by a preponderance of the evidence the facts that bring his cause within one of the exceptions to Article 1995.'"

The court goes on to say:

"We have carefully read the statement of facts and we find no evidence what-

soever in the statement of facts stating that the accident occurred in Houston or in Harris County, Texas."

and continues:

"Going back to the statement made by the court and assuming, without deciding, that the foregoing constituted a finding of fact by the trial court, it is not binding on the court here under the doctrine announced by our Supreme Court in Swanson v. Swanson, 148 Tex. 600, 228 S.W. 2d 156, wherein the Supreme Court said:

"'There is nothing in the rules which provides that in a case tried before the court without a jury the findings of fact are conclusive on appeal when a statement of facts appears in the record.'" (as is true in the case before us). "Citing many cases. See also Tex.Digest, Appeal and Error, ☜265. That is the exact situation here. So far as we have been able to find the Supreme Court has not changed the foregoing rule."

The Civil Appeals opinion then concludes:

"There being no evidence whatsoever in the statement of facts that the accident occurred in Harris County, Texas, plaintiff has wholly failed to carry his burden, and the judgment of the trial court is accordingly reversed and rendered * * *"

■ Following the opinion of Miller v. Burke, and on the basis of the second point of error presented to us, we are constrained to sustain such point of error and to reverse and render the holding of the trial court herein, which overruled the plea of privilege, and to order the cause transferred to Dawson County, Texas. The Clerk of the trial court is directed to proceed in accordance with Rule 89, Texas Rules of Civil Procedure, and if the date is applicable, in accordance with such rule as amended, effective January 1, 1967.

Reversed and rendered.